NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 06-1424
No. 08-4342
_____

ANDREAS SURYANTO,

Petitioner

v.

Attorney General of the United States,

Respondent

_____

On Petition for Review from an
Order of the Board of Immigration Appeals
(Board No. A95-846-410)
Immigration Judge: Donald Vincent Ferlise

_____

Submitted Under Third Circuit LAR 34.1(a)
October 19, 2010

Before: HARDIMAN, GREENAWAY, JR., and NYGAARD, *Circuit Judges*.

(Filed: October 22, 2010 )
_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge*.

In these consolidated appeals, Andreas Suryanto petitions for review of two orders

of the Board of Immigration Appeals (BIA). We will deny both petitions.

Because we write for the parties, we state only the facts and procedural history necessary to our decision. Suryanto is an Indonesian Chinese Christian who was placed in removal proceedings after overstaying his visa. He conceded removability, but applied for asylum, withholding of removal, and protection under the Convention Against Torture (CAT), arguing that he faced religious and ethnic persecution in Indonesia. After a hearing on the merits, the Immigration Judge (IJ) issued an oral decision denying Suryanto relief and granting his request for voluntary departure. The Board of Immigration Appeals (BIA) summarily affirmed the IJ's order. Following the BIA's decision, Suryanto incorrectly filed a petition for review in the Ninth Circuit, which transferred the case here. After his case was transferred, Suryanto married a United States citizen, and we held his appeal in abeyance pending adjudication of his I-130 application. Following approval of his I-130 application, Suryanto filed a motion with the BIA to reopen and remand his case. The BIA denied this petition, and Suryanto filed a second petition for review.

A.

Suryanto argues that he is entitled to relief because he has suffered persecution in Indonesia as a result of his Chinese ethnicity and Christian faith, and because he fears future persecution if he is forced to return. At his removal hearing, Suryanto recounted incidents of harassment and violence to support his claim. While a student in primary school, children frequently demanded money from Suryanto, and on ten or more

occasions he was physically assaulted, although sometimes the attack was limited to a slap or a push. Suryanto testified that he was targeted for these attacks because "they assume that every Chinese has money." Tr. 25.

Suryanto described two specific incidents of violence in greater detail. First, in 1990 he and a friend were beaten by seven or eight peers after rebuffing their demand for money. Second, about a year later, two older teenage boys accosted Suryanto and choked him until he "couldn't breathe." *Id.* at 30. Suryanto believed he was targeted both times because of his Chinese ethnicity.

Suryanto also related instances of violence and harassment directed toward his family. For example, Suryanto's father opened an electronics store in the late 1980s and gang members demanded protection money from him. Suryanto's father initially refused to pay, and the gang members beat him and his employees. Suryanto claimed that these incidents "only happen[ed] in the Chinese [stores]," and were thus likely motivated by ethnic animus. *Id.* at 41. In May 1998, during the widespread anti-government riots in Indonesia, Suryanto's father's electronics store was burned down and his family was forced to hide in their home for a period of three days.

In addition to this ethnically-motivated harassment, Suryanto described two religiously-motivated attacks that he experienced. On December 24, 2000, during a Christmas service at Suryanto's church in Jakarta, a bomb exploded in the parking lot. A few minutes later, after he had gone out to see what had happened, a second bomb exploded inside the church, causing several injuries, some of them serious. In January

3

2001, as Suryanto and other young members of the congregation were returning home from cleaning the church, they were again accosted. When Suryanto refused to turn over his money, he was beaten and warned: "don't even try to repair or rebuild that church." *Id.* at 53.

Soon after this incident, Suryanto left for Singapore at his mother's behest. After two months, however, he returned to Indonesia because Singapore was too "busy" and because it was "very difficult to find a job." *Id.* at 22. Five months later, in September 2001, Suryanto came to the United States.

In addition to his claims of past persecution, Suryanto testified that he fears future persecution because of ongoing hostility toward ethnic Chinese Christians in Indonesia.

B.

Although Suryanto had "basically been a credible witness," the IJ found that Suryanto did not suffer past persecution. IJ Opinion 8. The IJ concluded that Suryanto's run-ins with children seeking money were a result of his "refus[al] to give individuals money. Not because he was Chinese." *Id.* at 9. The IJ also held that the bombing of Suryanto's church was not an "act of persecution," but rather "an isolated act of aggression and terrorism." *Id.* This finding was buttressed by the fact that "[t]here were no problems before or subsequent to that incident at that church." *Id.* The IJ also noted that the attack made on Suryanto during his return from cleaning the church did not constitute religious persecution because it did not impair his freedom of worship. Finally, the IJ concluded that Suryanto did not "truly . . . fear for his life" in Indonesia, as

4

evidenced by his prompt return from Singapore. *Id*. at 4. The IJ found that had Suryanto truly feared for his life, he would have remained in Singapore "notwithstanding the fact that . . . life is very busy and hectic there, and notwithstanding the fact that he did not have a job at that time." *Id*. at 5.

Alternatively, the IJ held that Suryanto "could obviously avoid any future persecution by relocating to another section of his country . . . ." *Id*. at 11. Suryanto conceded that he "has had no problems as an adult" in the province where his parents reside, and that his family is free to practice religion there. *Id*.

C.

Suryanto petitioned for review of the IJ's decision and the BIA affirmed without opinion. Because Suryanto improperly sought review of the BIA decision in the Court of Appeals for the Ninth Circuit, the case was transferred here on January 25, 2006.[1]

On May 25, 2007, Suryanto married a United States citizen. He then moved the BIA to reopen his case, so we held his petition in abeyance pending further action by the BIA. After the BIA denied his motion, Suryanto filed a second petition for review, claiming a due process deprivation. We consolidated both petitions.

II.

---

[1] The Government claims we lack jurisdiction, citing the requirement of 8 U.S.C. § 1252(b)(1) that a "petition for review [of an order of removal] must be filed not later than 30 days after the date of the final order." Suryanto did, however, file his petition within the requisite timeframe; he simply filed it in the wrong venue. *See id.* §1252(b)(2). Because the venue requirement is nonjurisdictional, *Bonhometre v. Gonzales*, 414 F.3d 442, 446 n.5 (3d Cir. 2005), we reject the Government's argument in this regard.

A.

Where, as here, the BIA affirms the IJ's decision without opinion, we review the IJ's decision. *Zhang v. Gonzales*, 405 F.3d 150, 155 (3d Cir. 2005). We review the IJ's factual determinations under the substantial evidence standard, which requires us to defer to the IJ's findings "unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B). We review the BIA's denial of the motion to reopen for an abuse of discretion. *Borges v. Gonzales*, 402 F.3d 398, 404 (3d Cir. 2006).

B.

An alien is eligible for asylum, pursuant to 8 U.S.C. § 1158(b)(1)(A), if he qualifies as a "refugee" within the meaning of 8 U.S.C. § 1101(a)(42)(A), that is, if he "is unable or unwilling to return to" the country of his nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." The applicant bears the burden of showing that he qualifies as a refugee, *see Guo v. Ashcroft*, 386 F.3d 556, 561 (3d Cir. 2004), and he "must establish that race, religion, nationality, membership in a particular social group, or political opinion was or will be at least one central reason for [his] persecut[ion]." 8 U.S.C. § 1158(b)(1)(B)(i). "Persecution" is defined as "threats to life, confinement, torture, and economic restrictions so severe that they constitute a threat to life or freedom." *Lie v. Ashcroft*, 396 F.3d 530, 536 (3d Cir. 2005) (quoting *Fatin v. INS*, 12 F.3d 1233, 1240 (3d Cir. 1993)). A "well-founded fear of persecution" must be both genuinely held by the petitioner and objectively reasonable. *Id.* An alien may establish a

6

presumption that a well-founded fear exists by demonstrating that he suffered persecution in the past. 8 C.F.R. § 208.13(b)(1).

After careful review of the record, we are unable to conclude that any reasonable factfinder would have been compelled to disagree with the IJ. In *Lie v. Ashcroft*—another case involving an ethnically Chinese Christian from Indonesia—we stated that "[s]imple robbery, in isolation, while unfortunate and troubling, does not seem to meet th[e] stringent standard" required to establish persecution under the statute. 396 F.3d at 536. The same conclusion applies here: although the robberies Suryanto suffered were terrible, a reasonable factfinder would not be compelled to conclude that they were severe enough to constitute persecution under the statute. Likewise, a reasonable factfinder would not be compelled to conclude that the bombing of Suryanto's church and the subsequent warning constituted persecution.

Moreover, there is insufficient evidence to compel a reasonable factfinder to conclude that the robberies were motivated by Suryanto's race, as opposed to his perceived wealth. In *Lie*, the robbers referred to the petitioner as a "Chinese pig," but we agreed with the BIA that "a single ethnic slur was insufficient to establish that the thieves were motivated by Lie's or her husband's ethnicity." *Id.* at 535 (internal quotation marks omitted). Similarly, although Suryanto has offered some evidence supporting his contention that the harassment he suffered was a result of ethnic animus, the majority of his testimony supports the IJ's conclusion that financial gain was the motivating force.

Furthermore, a reasonable factfinder could conclude (as the IJ did) that Suryanto

does not subjectively hold a well-founded fear of persecution based on his voluntary return to Indonesia from Singapore.

For all the foregoing reasons, we will affirm the IJ's conclusion that Suryanto is not eligible for asylum, which also dooms his claim for withholding of removal. *See Kibinda v. Att'y Gen.*, 477 F.3d 113, 123 (3d Cir. 2007).

### III.

Suryanto next claims the BIA's denial of his motion to reopen following his marriage deprived him of due process of law. We review this claim *de novo*.

We find no constitutional infirmity in the BIA's action. "[A] cognizable liberty or property interest must exist in the first instance for a procedural due process claim to lie." *Mudric v. Att'y Gen.*, 469 F.3d 94, 98 (3d Cir. 2006). Here, Suryanto seeks reopening to vindicate his supposed interest in adjusting his immigration status. Ordinarily, the Attorney General has discretion to adjust an alien's status.[2] *See* 8 U.S.C. § 1255(a); *Mudric*, 469 F.3d at 98-99. When the decision to grant or withhold a benefit is entrusted to the discretion of a government actor, one has no constitutional property interest in obtaining that relief. *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 465 (1981). Accordingly, Suryanto does not have a sufficient property or liberty interest in the

---

2 In the instant case it appears that the Attorney General may have been statutorily required to deny adjustment because Suryanto failed to voluntarily depart within the timeline set by the IJ. *See* 8 U.S.C. § 1229a(b)(7) (an alien who fails to voluntarily depart is ineligible for relief under § 1255, governing adjustment of status, for 10 years). Because we find that Suryanto does not have a viable due process claim, however, there is no need for us to address this issue.

adjustment of his status to qualify for due process protection. *Mudric*, 469 F.3d at 99 ("No constitutional injury occurred from the INS delays in this case because Mudric simply had no due process entitlement to the wholly discretionary benefits of which he and his mother were allegedly deprived . . . ."). Suryanto's due process claim therefore must fail.

IV.

For the foregoing reasons, we will deny both of Suryanto's petitions for review.