# IN THE COURT OF CHANCERY IN THE STATE OF DELAWARE

| | |
|---|---|
| IN RE THE NEW MAURICE J. MOYER ACADEMY, INC. | CONSOLIDATED C.A. No. 10398-CB |

## OPINION

Date Submitted:  January 2, 2015
Date Decided:  January 9, 2015

Kurt M. Heyman, Melissa N. Donimirski and Dawn Kurtz Crompton of PROCTOR HEYMAN LLP, Wilmington, Delaware; Michael P. Migliore and Christofer C. Johnson of CITY OF WILMINGTON LAW DEPARTMENT, Wilmington, Delaware; *Attorneys for Plaintiffs Shauniece Anderson, for her minor child S.A.; Shatana Turner, for her minor child D.T.; Alvin Alexander, for his minor children Z.A. and O.A.; and The City of Wilmington.*

William E. Manning, James D. Taylor, Jr. and Allison J. McCowan of SAUL EWING LLP, Wilmington, Delaware; *Attorneys for Plaintiffs The New Maurice J. Moyer Academy, Inc.; Judi Kennedy, for her minor child K.D., Jemuel Anderson, for his minor child J.K.A.J.; Jacqueline Bailey, for her minor child J.L.; Shalonda Davis, for her minor child O.D.; and Darcel Earl, for her minor child C.G.*

Joseph C. Handlon, Scott W. Perkins, Catherine T. Hickey, Ilona Kirshon and Roopa Sabesan of DEPARTMENT OF JUSTICE STATE OF DELAWARE, Wilmington, Delaware; Max B. Walton and N. Christopher Griffiths of CONNOLLY GALLAGHER LLP, Newark, Delaware; Ryan P. Newell of CONNOLLY GALLAGHER LLP, Wilmington, Delaware; *Attorneys for Defendants.*

**BOUCHARD, C.**

## I. INTRODUCTION

In 1995, the General Assembly adopted the Delaware Charter School Act.[1] The purpose of the Act was "to create an alternative to traditional public schools operated by school districts and improve public education overall by establishing a system of independent 'charter' schools throughout the State."[2] To that end, the Act "offers members of the community a charter to organize and run independent public schools, free of most state and school district rules and regulations governing public education," and with the use of public funds, "as long as they meet the requirements of [the Act], and particularly the obligation to meet measurable standards of student performance."[3]

Today, over 30 charter schools operate in the State of Delaware. This action concerns one of them. Maurice J. Moyer Academic Institute ("New Moyer") is a charter school located in Wilmington, Delaware serving grades 6-12. In 2011, it was granted a four-year charter that started with the 2012-2013 school year, and expires at the end of the 2015-2016 school year.

In this action, the operator of New Moyer, parents representing several of its students, and the City of Wilmington seek a preliminary injunction to enjoin the Delaware Department of Education, the Secretary of Education for the State of Delaware, and the Delaware State Board of Education from implementing their October 2014

---

[1] 14 *Del. C.* ch. 5.

[2] 14 *Del. C.* § 501.

[3] *Id.*

1

decision to revoke New Moyer's charter and to close the school at the end of the current school year, in June 2015, one year before the charter expires. As discussed below, following an extensive process set forth in the Charter School Act, this decision was made because, among other reasons, New Moyer is the lowest performing charter school in the State based on the State's testing standards.

New Moyer serves some of the most economically disadvantaged students in the State of Delaware. They face significant academic challenges. It is natural to be sympathetic to Plaintiffs' desire to keep New Moyer's doors open for an additional school year so that the families who chose New Moyer can continue to send their children to what they view as their only practical option to attend a school in their neighborhood. It is the responsibility of State officials, however, to make the tough decisions concerning whether a charter school is meeting its obligations under the Charter School Act.

The primary issue before the Court is whether Plaintiffs have demonstrated a reasonable probability that they have been denied due process under the Fourteenth Amendment of the United States Constitution with respect to the decision to revoke New Moyer's charter. For the reasons discussed below, I conclude they have not. More specifically, I conclude that New Moyer does not have a constitutionally protected property interest in its charter and that its students do not have a constitutionally protected interest in graduating from New Moyer and that, even if they did, Plaintiffs have failed to demonstrate that it is reasonably probable they were not afforded due process.

2

I also conclude that, although the Charter School Act expressly prohibits judicial review of the merits of a decision to revoke a school's charter, it impliedly affords the school the right to challenge whether one of the statutorily required grounds upon which a charter may be revoked was made after the exercise of due diligence and good faith. The evidence Plaintiffs have presented, however, is insufficient to demonstrate that it is reasonably probable this standard was not met here.

For these and the other reasons explained below, Plaintiffs' motion for a preliminary injunction is denied.

## II.    BACKGROUND[4]

### A.    The Parties

Plaintiff The New Maurice J. Moyer Academy, Inc., a non-stock, non-profit Delaware corporation, operates Maurice J. Moyer Academic Institute, a charter school serving grades 6-12 in the City of Wilmington, Delaware.   Although these two entities are technically distinct, I refer to them interchangeably as "New Moyer."

---

[4] These are the preliminary facts as I find them based on the documentary evidence and affidavits from the following individuals submitted by the parties in conjunction with Plaintiffs' preliminary injunction motion: (i) Rev. Christopher T. Curry, Ph.D, Chairman of the Board of Directors of New Moyer ("Curry Aff."); (ii) John H. Carwell, Jr., an Education Associate at the Department ("Carwell Aff."); (iii) Donna R. Johnson, the Executive Director of the State Board and a non-voting member of the Committee ("Johnson Aff."); (iv) Barbara Mazza, an Education Associate at the Department and a voting member of the Committee ("Mazza Aff."); (v) Mary Kate McLaughlin, the Chief of Staff for the Department ("McLaughlin Aff."); (vi) Jennifer Nagourney, the Executive Director of the Department's Charter School Office ("Nagourney Aff."); and (vii) Shelley Rouser, the Director of K-12 Initiatives and Educator Engagement for the Department ("Rouser Aff.")  No depositions were taken in connection with Plaintiffs' preliminary injunction motion.

3

Plaintiffs Shauniece Anderson, Shatana Turner, Alvin Alexander, Judi Kennedy, Jemuel Anderson, Jacqueline Bailey, Shalonda Davis, and Darcel Earl are Delaware citizens who filed suit on behalf of their minor children who currently attend New Moyer. I refer to these citizens and their minor children together as the "Individual Plaintiffs."

Plaintiff The City of Wilmington, a Delaware municipal corporation, filed suit as *parens patriae* for the benefit of minor citizens who attend or wish to attend New Moyer.

Defendant Delaware Department of Education (the "Department") is the State agency that oversees public education in Delaware.

Defendant Mark T. Murphy is, and was as of the date of the revocation decision, the Secretary of Education for the State of Delaware (the "Secretary"). Murphy is sued solely in his official capacity as the Secretary.

Defendant Delaware State Board of Education (the "State Board"), an entity within the Department, is the governing body of the Delaware school system. The State Board administers and supervises the charter schools of Delaware.

Defendants Teri Quinn Gray, Jorge L. Melendez, Gregory G. Coverdale, Jr., G. Patrick Heffernan, Randall L. Hughes, II, Barbara B. Rutt, and Jerry M. Whittaker are, and were as of the date of the revocation decision, the seven members of the State Board. They are sued solely in their official capacities as members of the State Board.

## B.     The Predecessors to New Moyer

In 2006, the Department granted a charter for a school named The Maurice J. Moyer Academy, Inc. ("Old Moyer"), which would be located in the City of Wilmington.

4

In February 2010, the Secretary of the Department recommended, and the State Board agreed, not to renew Old Moyer's charter.[5]

In 2010, the General Assembly directed the Department to manage a school at the location of Old Moyer from July 1, 2010, until June 30, 2012.[6]  Pursuant to the General Assembly's directive, in July 2010, the Department contracted with K-12 Classroom DE, LLC ("K12") to provide educational services for the 2010-2011 academic year.[7]  In July 2011, after issuing a request for proposals for a third party to provide educational services for the 2011-2012 academic year,[8] the Department awarded that contract to K12.[9]

### C.    New Moyer is Formed and Receives a Charter from the Department

On January 3, 2011, a group of individuals (the "Moyer Board") submitted an application to the Department to operate a charter school at the former location of Old Moyer.[10]  The application, which reflected the "consensus" of the Moyer Board members on the new school's "mission, goals and organization," was signed by all members of the Moyer Board, including the current Chairman, Christopher Curry ("Curry"), and the

---

[5] Defs.' Ex. 1 at DOE-MOYER001418-21.

[6] 77 Del. Law Ch. 327; 145th General Assembly, SB 310 § 384.

[7] Defs.' Ex. 2.

[8] Defs.' Ex. 3.

[9] Defs.' Ex. 4; Carwell Aff. ¶ 12.

[10] Pls.' Ex. 9.

current Vice Chairman.[11]   The application set forth forty-seven separate "assurances" of the Moyer Board should it receive a charter.  Those assurances included, for example, that the school would "[b]e in full compliance with 14 Delaware Code, Chapter 5" (the Charter School Act); that the Moyer Board would "not implement any modifications to the charter school program or operation without the express written consent of the Department"; and that the Moyer Board and the school would "[c]omply with the provisions for a Performance Agreement, as required by the Secretary."[12]

The Moyer Board contemplated that the new school, New Moyer, would serve 365 students in grades 6-12 in its first year and would expand to serve 600 students in grades 6-12 in its fourth year.[13]  Anticipating that New Moyer's demographics would be similar to those of its predecessors, the Moyer Board projected that the student body would be predominantly economically disadvantaged (with over 90% qualifying for free or reduced lunch) and minority (with over 99% being African American), and that approximately 25% of its students would need special education services.[14]

According to its application, the Moyer Board "intend[ed] to contract with [K12] for educational and management services in the operation of the school if the Moyer

---

[11] *Id.* at CW000416, 495, 498.  Although the composition of the Moyer Board has changed since New Moyer received its charter, the identity of its members is immaterial to this opinion.

[12] *Id.* at CW000491-94.

[13] *Id.* at CW000414.

[14] *Id.* at CW000415.

Board [were] granted a charter."[15]  The Moyer Board further stated that it found K12, which offered an online instruction method, to be "the premier provider of curriculum, systems, and services" in digital education.[16]  The application also included a draft services agreement between New Moyer and K12 pursuant to which K12 would provide educational services to New Moyer's students through the 2020-2021 academic year, unless terminated earlier.[17]

On April 1, 2011, the Charter School Accountability Committee (the "Committee") issued a final report on New Moyer's charter application.[18]  The Committee found that New Moyer satisfied thirteen of the fourteen criteria required for approval under the Charter School Act.[19]  The only criterion not satisfied was New Moyer's educational programming.[20]  Regarding New Moyer's proposed curriculum, the Committee approved Science and Health Education; conditionally approved Math and

---

[15] *Id.* at CW000417-18.  The signed application states that the Moyer Board "has worked closely with K12 in the development of [the] application." *Id.*  This representation is at odds with the affidavit of Moyer Board's Chairman, which implies that the Moyer Board was not involved in the preparation of the application.  *See* Curry Aff. ¶ 6.

[16] Pls.' Ex. 9 at CW000434.

[17] Defs.' Ex. 6 at DOE-MOYER000208.

[18] Pls.' Ex. 12.

[19] *See* 14 *Del. C.* § 512.

[20] Pls.' Ex. 12 at CW001002.

Social Studies; but did not approve Physical Education, World Languages, Visual Arts, or Performing Arts based on the information submitted.[21]

In its report, the Committee recommended that the State Board approve New Moyer's charter application, subject to twenty-three conditions. Those conditions included requiring the Moyer Board to submit to the Department a proposed Performance Agreement "specifying measurable objectives with annual targets that is acceptable to the Secretary" by February 15, 2012.[22] The Committee also required New Moyer to submit its curricula for Math, Social Studies, Physical Education, World Languages, Visual Arts, and Performing Arts for review and approval by the Department by August 1, 2012.[23]

On April 21, 2011, the Secretary recommended, and the State Board approved, by a 6-0 vote, the issuance of a charter to New Moyer, subject to the conditions in the Committee's final report.[24] The charter would permit New Moyer to begin operations starting with the 2012-2013 academic year[25] and to remain open through the 2015-2016 academic year.[26]

On February 7, 2012, nearly ten months after New Moyer received a charter, a Department employee inquired about the status of New Moyer's services agreement with

---

[21] *Id.*

[22] *Id.* at CW001006 (condition #16).

[23] *Id.* (condition # 10).

[24] Defs.' Ex. 5 at DOE-MOYER001498.

[25] *Id.*

[26] Curry Aff. ¶ 5.

K12. The employee forwarded to Curry a copy of the draft services agreement that the Moyer Board had submitted in its charter application and encouraged Curry to consult an attorney regarding a final agreement.[27]

On July 1, 2012, New Moyer officially took over operations at the former location of Old Moyer. As of August 23, 2012, New Moyer still had not submitted an executed services agreement to the Department. When a Department employee inquired about the status of that agreement on August 23, Curry stated that New Moyer's counsel was in "the process of drafting the K12 Agreement."[28]

By December 3, 2012, New Moyer and K12 executed an Education Products and Services Agreement (the "Services Agreement"), which was dated to be effective retroactively as of July 1, 2012.[29] Under the Services Agreement, K12 would provide educational services to New Moyer's students, and New Moyer became "responsible for monitoring K12's performance under, and compliance with, the terms of this Agreement

---

[27] Carwell Aff. ¶ 14; Curry Aff. Ex. C. The preliminary record does not reflect that anyone at the Department had authored any part of that draft agreement or that the Department mandated that the Moyer Board agree to the particular provisions of that draft.

[28] Defs.' Ex. 7.

[29] Pls.' Ex. 11 at CW000967, 990.

in accordance with Applicable Law."[30]  The Services Agreement continues through the 2015-2016 academic year, unless terminated earlier.[31]

### D.     New Moyer's Performance in its First Year (2012-2013)

New Moyer failed to meet the August 1, 2012, deadline the Committee had set in its April 2011 report to submit and receive approval of its curriculum.  Thus, when New Moyer opened in fall 2012, it lacked a curriculum approved by the Department.[32]  On November 19, 2012, the Department instructed New Moyer to submit the outstanding curricula for approval no later than December 31, 2012.[33]  This deadline was extended further to May 31, 2013, by which time New Moyer submitted a proposed curriculum for approval.[34]  On June 11, 2013, content specialists at the Department prepared an internal report noting certain deficiencies in New Moyer's proposed curriculum.[35]

The Department rated the overall academic performance of New Moyer for the 2012-2013 academic school year to be "below standard."[36]  Of the fifteen categories in

---

[30] *Id.* at CW000972 (§ 3.1).  The Services Agreement provides that Delaware law is the applicable law.  *Id.* at CW000968 (§ 1.2).

[31] *Id.* at CW000973 (§ 5.1).

[32] Carwell Aff. ¶ 2.

[33] Defs.' Ex. 8.

[34] Carwell Aff. ¶ 3.

[35] Pls.' Ex. 28.

[36] Pls.' Ex. 26 at CW001085.  The ratings system the Department used contains four ratings, in descending order: (1) exceeds standard, (2) meets standard, (3) does not meet (or below) standard, and (4) far below standard.  *Id.* at CW001077.

which academic performance was rated, New Moyer received two ratings of "exceeds standard," two ratings of "meets standard," six ratings of "below standard," and five ratings of "far below standard."[37]  For the 2012-2013 academic year, the percentage of students scoring "proficient" according to Delaware state standards was 49.6% in English Language Arts and 40.3% in Math, both of which were slightly below the 20th percentile for all schools in the State.[38]

### E.    New Moyer Requests to Modify its Curriculum

During its first year of operation, New Moyer deviated from the online instruction method set forth in its charter application without obtaining the Department's written approval.[39]  On November 19, 2012, the Department instructed New Moyer to submit a proposed charter modification regarding this change in instruction method no later than December 31, 2012.[40]

On December 17, 2012, New Moyer applied to the Department to modify its charter by changing its curriculum and by decreasing its authorized enrollment.[41]

---

[37] *Id.* at CW001085.

[38] Pls.' Ex. 39 at CW000744; Pls.' Ex. 13 at CW001009.

[39] Carwell Aff. ¶ 4.

[40] Defs.' Ex. 8.

[41] Pls.' Ex. 15.

Regarding the curriculum, New Moyer sought to change its instructional method for core academic courses from online instruction to traditional, classroom instruction.[42]

On May 30, 2013, the Committee met with New Moyer representatives to discuss the charter modification proposal.[43] On June 27, 2013, the Committee recommended that the Department deny New Moyer's request because of deficiencies in its proposal, including the curricula for English Language Arts, Math, and Social Studies.[44]

On July 18, 2013, the State Board was informed that the Secretary had denied New Moyer's charter modification request. Because this charter modification required approval by both the Secretary and the State Board, the State Board took no further action on New Moyer's request.[45]

On July 25, 2013, the Department met with representatives of New Moyer to discuss its curriculum. Moyer Board's Chairman understood the importance of this meeting. Beforehand, in a July 18 email, Curry stated that the meeting "should not be taken lightly. We will be given hard deadlines and if we do not produce, Moyer's future is no more!"[46]

---

[42] *Id.* at CW001056-57; Carwell Aff. ¶ 5.

[43] Defs.' Ex. 9 at MOYER-COVERDALE000164.

[44] *Id.* at MOYER-COVERDALE000154-63.

[45] Defs.' Ex. 10 at DOE-MOYER001628.

[46] Defs.' Ex. 11.

After the July 25 meeting, the Department sent New Moyer a "Curriculum Refinement Review," which provided detailed feedback on New Moyer's curriculum.[47] Similarly, on July 26, 2013, the Department provided New Moyer with a "Corrective Action Plan," which set forth "the expectations of the Department, the deadlines that must be met, and the areas in which the Department will engage in ongoing monitoring of [New] Moyer's progress."[48] The Department further informed New Moyer that, as part of the Corrective Action Plan, it would conduct site visits during September and October 2013.[49]

During the Corrective Action Plan period, the Department provided feedback on New Moyer's curriculum in reports dated October 3, 2013, October 27, 2013, and January 9, 2014.[50] On November 8, 2013, the Department also provided New Moyer with a report explaining certain observations in its monitoring of the Corrective Action Plan, noting that New Moyer's curriculum "continue[d] to lack coherence, appropriate progressions and alignment with assessments, and [did] not align to Common Core State Standards."[51] The report further noted that the Department had "found little

---

[47] Carwell Aff. ¶ 9, Ex. E.

[48] McLaughlin Aff. ¶ 2.

[49] *Id.* Ex. B at DOE-MOYER001758.

[50] Rouser Aff. ¶ 4, Exs. A-C. A Department employee noted in an affidavit that "[s]everal overarching areas of misalignment of New Moyer's curriculum with the State Standards for math, English language arts (ELA), science and social studies were identified in each of these reports." *Id.* ¶ 5.

[51] McLaughlin Aff. ¶ 5, Ex. E.

improvement over the submissions that resulted in the denial of [New Moyer's] modification application in July, 2013."[52]

F.      New Moyer's Performance in its Second Year (2013-2014)

On September 24, 2013, after New Moyer had operated for one academic year, New Moyer and the Department entered into the Performance Agreement,[53] which had been a condition of New Moyer's charter.[54]   The Performance Agreement set forth certain performance expectations for New Moyer, including:

> By 2015, [New Moyer's] expectation is to achieve the overall rating of "Meets" or "Exceeds" standard as measured by the Academic Performance Framework.  Each year, [New Moyer] will show growth within [its] overall rating putting [it] on track to achieve [its] academic performance expectations.  This progress will be monitored through [its] annual performance review.[55]

The Performance Agreement would "continue in full force and effect during the term of the school's charter and any subsequent renewal term thereof."[56]   Although the Performance Agreement is styled as a contract, it does not include any representations or warranties, covenants, or other obligations on behalf of the Department.  Indeed, the Performance Agreement provides that "in the sole discretion of the [Department], with the assent of the [State Board], this agreement may be amended at such time as the

---

[52] *Id.*

[53] Pls.' Ex. 18.

[54] Pls.' Ex. 12 at CW001006 (condition #16); Pls.' Ex. 9 at CW000492 (assurance #13).

[55] Pls.' Ex. 18 at CW000561.

[56] *Id.* at CW000559.

14

school's charter may be renewed under the provisions of 14 *Del. C.* § 515(b) or subjected to review under 14 *Del. C.* § 515(c)."[57]

In January 2014, the Department conducted an on-site monitoring visit of New Moyer's special education services. The Department found 67 of 68 student records to be noncompliant with regulations under the federal Individuals with Disabilities Education Act, including the requirement of Individualized Education Plans ("IEPs").[58] In February 2014, the Department notified New Moyer in writing of the on-site monitoring results.[59]

On February 27, 2014, the Department met with representatives of New Moyer to discuss its observations, to conduct a "Root Cause Analysis," and to develop a "Corrective Action Plan" to ensure New Moyer's compliance with federal and State special education regulations.[60] On March 7, 2014, the Department provided certain professional development services to New Moyer representatives.[61] The Department set a deadline of April 1, 2014, for New Moyer to correct noncompliance in the 67 IEPs previously identified as noncompliant ("Prong 1"), and another deadline of May 1, 2014,

---

[57] *Id.* at CW000559 (§ 2) The Performance Agreement additionally provides that, "[i]f the [Department] finds that the school is not making satisfactory progress toward its performance targets the [Department], with the assent of the [State Board], may place the school's charter on formal review pursuant to 14 *Del. C.* § 515(c)." *Id.* (§ 3(b)).

[58] Mazza Aff. ¶ 4.

[59] *Id.* ¶ 5.

[60] *Id.* Ex. A.

[61] *Id.* ¶ 7, Ex. B.

15

for New Moyer to correct any systemic noncompliance in its special education procedures ("Prong 2").[62] These deadlines were extended twice, ultimately to May 16, 2014 (for Prong 1) and May 31, 2014 (for Prong 2).[63]

In May and June 2014, the Department reviewed New Moyer's updated files for Prong 1 and concluded that 29 student records were still noncompliant.[64] On June 23, 2014, the Department sent a letter to New Moyer outlining its monitoring of New Moyer's compliance with special education regulations.[65] Because of the outstanding noncompliance, the Department required New Moyer to enter into the Compliance Agreement,[66] which it did in July 2014.[67]

The Compliance Agreement required New Moyer to correct the 29 noncompliant student records by September 19, 2014. On September 19, the Department reviewed New Moyer's updated files and orally informed New Moyer that it was in compliance with Prong 1.[68] The Department then further extended the deadline for New Moyer to

---

[62] *Id.* ¶ 6.

[63] *Id.* ¶ 7.

[64] *Id.* ¶ 8.

[65] *Id.* ¶ 9.

[66] *Id.* Ex. C.

[67] *Id.* Ex. D.

[68] *Id.* ¶ 12; Curry Aff. ¶¶ 27-28, Ex. M.

satisfy Prong 2, to correct any systemic noncompliance in New Moyer's special education procedures, until November 3, 2014.[69]

The Department rated the overall academic performance of New Moyer for the 2013-2014 academic school year to be "far below standard."[70] Of the seventeen categories in which academic performance was rated (the fifteen categories from the prior year plus two new categories), New Moyer received zero ratings of "exceeds standard," one rating of "meets standard," three ratings of "below standard," and thirteen ratings of "far below standard."[71] The test scores of New Moyer students on the Delaware Comprehensive Assessment System were the lowest of any charter school in the State.[72] For the 2013-2014 academic year, the percentage of students scoring "proficient" according to Delaware state standards was 23.1% in English Language Arts, a decrease from 49.6% for the prior year; 10.2% in Math, a decrease from 40.3% in the prior year; 6.2% in Science, a decrease from 12.1% in the prior year; and 0% in Social Studies, a decrease from 39.3% in the prior year.[73]

---

[69] Mazza Aff. ¶ 12. On November 3, 2014, the Department reviewed 26 individual student records and concluded that ten were noncompliant with special education regulations. *Id.* ¶ 13. Plaintiffs note, logically, that these additional examples of noncompliance cannot support the decision to revoke Moyer's charter since they were found after that decision had been made in October 2014.

[70] Pls.' Ex. 26 at CW001085.

[71] *Id.*

[72] Pls.' Ex. 31 at CW000666.

[73] Pls.' Ex. 39 at CW000744-45; *see also* Pls.' Ex. 26 at CW001078.

The Department also measured the growth of New Moyer students during the academic year.[74] The percentage of New Moyer students meeting their academic growth targets fell from 70% in English Language Arts and 55.2% in Math for the 2012-2013 year to 28.1% in English Language Arts and 39.5% in Math for the 2013-2014 year.[75] Although 61% of New Moyer's student body for the 2013-2014 year had attended a different school in the prior year, there was only a "nominal difference" between the growth rate performances in these subjects for students who attended New Moyer for both 2012-2013 and 2013-2014 compared to those who attended for only 2013-2014.[76]

## G.    New Moyer Again Requests to Modify its Curriculum

On May 13, 2014, New Moyer applied for a major modification of its charter to adopt a curriculum provided by SpringBoard in English Language Arts and Math.[77] The Department had earlier suggested the SpringBoard curriculum to New Moyer in March and April 2014.[78] SpringBoard, which several Delaware schools use, would allow New

---

[74] Johnson Aff. ¶ 6.

[75] Pls.' Ex. 26 at CW001077.

[76] Defs.' Ex. 16 ("Students who attended Moyer in both 12-13 and 13-14 met 40% of their Math targets, compared to 34% of students attending Moyer in only 13-14. Similarly for ELA, 27% of students who attended for both 12-13 and 13-14 met their targets, compared to 25% of students who attended for only 13-14.").

[77] Pls.' Ex. 27.

[78] Curry Aff. ¶¶ 13-14.

Moyer to "use Delaware certified teachers to deliver instruction in [its] core courses," while continuing to use online instruction in its elective courses.[79]

On June 12, 2014, the Committee met with New Moyer representatives to discuss its modification request. On June 17, 2014, the Committee issued an initial report on New Moyer's request in which it expressed concern about implementing a new curriculum, and requested additional information regarding New Moyer's professional development and teacher instruction plans.[80]

On July 9, 2014, the Committee again met with representatives of New Moyer.[81] The Committee agreed to recommend New Moyer's request for charter modification pending submission of satisfactory documents by July 14, 2014, to address six areas of concern, which included providing a plan to fill student knowledge gaps in the proposed transition from K12 to SpringBoard and professional development for teachers.[82]

On July 21, 2014, the Committee issued its final report recommending non-approval of New Moyer's charter modification request.[83] New Moyer had adequately addressed only two of the Committee's six areas of concern by July 14.[84] The four unsatisfactory areas of concern included student knowledge gaps. According to the

---

[79] Pls.' Ex. 27 at CW000597, 600.

[80] Pls.' Ex. 29 at CW001093-94.

[81] Pls.' Ex. 30 at CW000676.

[82] *Id.* at CW000682.

[83] *Id.* at CW000683.

[84] *Id.*

Committee, New Moyer failed to provide "a detailed plan for placing students in courses, [and] an indication of the specific data that will be used to place students or determine deficits in prerequisite skills and knowledge."[85]

On August 5, 2014, the Committee held a public hearing in Dover, Delaware on its final report.[86] According to the transcript, no representative of New Moyer addressed the Committee at this hearing. On August 21, 2014, at a State Board meeting, the Secretary announced his decision to accept the Committee's recommendation and deny New Moyer's charter modification request.[87] In light of the Secretary's decision, the State Board took no further action on New Moyer's request.[88]

## H.     The Department Places New Moyer under "Formal Review"

On July 17, 2014, with the assent of the State Board, the Secretary sent a letter to the Moyer Board informing its members that New Moyer was being placed on Formal Review.[89] The Secretary set forth seven areas in which New Moyer was noncompliant

---

[85] *Id.* The other unsatisfactory areas were: (i) Common Core standards for mathematical practice; (ii) assessments; and (iii) pacing instruction. *Id.*

[86] Defs.' Ex. 14.

[87] Defs.' Ex. 15 at DOE-MOYER001752.

[88] *Id.* Plaintiffs note that, on August 19, 2014, Curry requested to meet with the Department's curriculum professionals to discuss New Moyer's charter modification request. Pls.' Reply Br. Ex. B. The evidence reflects that there was no such meeting before or after the August 21, 2014, State Board meeting. Curry Aff. Ex. H.

[89] Pls.' Ex. 31. The Formal Review notice came one month after the University of Delaware, the Delaware Academy for School Leadership, and the Department released a Comprehensive School Review of New Moyer on June 17, 2014. Defs.' Ex. 17. The report noted, among other findings, that New Moyer "lacks a clear mission and vision

20

with State law and/or its charter: (i) academic performance; (ii) special education services; (iii) educational programming; (iv) discipline and attendance;[90] (v) student assessment; (vi) staff credentialing; and (vii) financial and administrative operations.[91]

---

that focus instruction and to provide a unifying purpose," and that "[t]here is an organizational structure disconnect among board, school leadership, staff, and K12 management." *Id.* at DOE-MOYER001141. The report also noted that "[s]tudents report that they do not feel safe in school" in part because "the front door is routinely unlocked so anyone can get into the halls and classrooms." *Id.* at DOE-MOYER001181.

[90] Under the category of disciple and attendance, the letter identified six items of concern. The first item reported that the out of school suspension rate for New Moyer students for the 2013-2014 academic year was 61% as opposed to the State average of 9%. Pls.' Ex. 31 at CW000667. Plaintiffs make much of the fact that, on October 8, 2014, New Moyer informed the Department that its suspension data were incorrect because one student was listed as suspended for 400 days after he no longer attended the school. Curry Aff. ¶¶ 30-32, Ex. P. The Department reviewed the issue and concluded that their records and statistics were not affected by this error because their analysis did not rely on the data field in which the error was made. Nagourney Aff. ¶ 4, Ex. A. Plaintiffs have not identified any discrepancies regarding the five other items the Department had identified concerning discipline and attendance, three of which the Secretary identified in his letter of October 13, 2014 (in addition to the 61% suspension rate), as part of the grounds for his revocation decision concerning the issue of discipline and attendance. *See* Pls.' Ex. 43 at CW000825.

[91] Pls.' Ex. 31 at CW000666-67.

Attached to the Secretary's letter was a timeline for the Formal Review process.[92] The Secretary's Formal Review notice was also posted on the Department's website.[93]

## I.     The Committee Recommends Revocation of New Moyer's Charter

As required by Section 515(c) of the Charter School Act, the Department appointed the Committee to conduct an initial review of New Moyer to determine whether New Moyer was in compliance with its charter and all applicable laws and regulations, and, if not, to determine whether remedial measures were appropriate.[94] On August 5, eleven representatives of New Moyer, including four members of the Moyer

---

[92] The attachment outlining the Formal Review timeline is not in the record but is publicly available. *See Formal Review Process Timeline*, Delaware Department of Education (Sept. 2, 2014), *available at* http://www.doe.k12.de.us/cms/lib09/DE01922744 /Cntricity/Domain/151/Formal%20Review%20Process/2014-15%20Formal%20Review/ UpdatedMJMFormalReviewTimeline.pdf. I take judicial notice of this information because it is not subject to reasonable dispute. D.R.E. 201(b); *In re Lear Corp. S'holder Litig.*, 967 A.2d 640, 656 (Del. Ch. 2008) (taking judicial notice on plaintiffs' preliminary injunction motion).

[93] The original link to the Secretary's Formal Review notice inadvertently directed to a notice for a different charter school. On July 18, 2014, the day after the Formal Review notice was posted online, this issue was brought to the attention of the Charter School Office, and the website link was corrected that day. Nagourney Aff. ¶ 8; Defs.' Ex. 19. When this action was filed on November 25, 2014, however, the link to the New Moyer Formal Review notice again had been directed to the wrong document. Defendants assert that this error likely was caused by an update to the Department's website on November 7, 2014—nearly a month after the Secretary and the State Board would vote to revoke New Moyer's charter. Nagourney Aff. ¶ 8; Pls.' Ex. 32. There is no evidence reflecting that the link was, in fact, incorrect between July 18 and November 7. I credit the Nagourney affidavit and conclude for purposes of this opinion that the correct Formal Review notice was available on the Department's website from July 7 to November 7.

[94] Pls.' Ex. 39 at CW000744; Pls.' Ex. 31 at CW000666.

22

Board, met with the Committee to discuss the seven areas identified in the Secretary's Formal Review notice.[95] Two members of the public also attended this meeting.[96]

Also on August 5, 2014, immediately following the Committee's public hearing on New Moyer's charter modification request to use SpringBoard, the Committee held a public hearing in Dover on the Formal Review process. The transcript of this Committee meeting reflects that: (i) New Moyer was notified of the hearing in the Secretary's Formal Review notice; (ii) on July 18, 2014, a notice of the meeting was placed on the Department's website and on the State's online public meeting calendar; and (iii) also on July 18, a notice of the hearing was published in *The News Journal* and *Delaware State News*.[97] Keenan Dorsey, the principal of New Moyer, made comments on the record.[98]

On August 7, 2014, the Committee issued its Initial Report recommending that New Moyer be found noncompliant with its charter and relevant Delaware regulations based on the same seven areas of noncompliance identified in the Secretary's Formal Review notice.[99] New Moyer was given the opportunity to respond in writing to the Initial Report by August 22, 2014.

---

[95] Defs.' Ex. 18 at DOE-MOYER001278-87.

[96] *Id.* at DOE-MOYER001279.

[97] Pls.' Ex. 33 at CW000700.

[98] *Id.* at CW000704-07; Nagourney Aff. ¶ 7.

[99] Defs.' Ex. 18 at DOE-MOYER 001287-88.

23

On August 19, 2014, New Moyer submitted a written response.[100] In its response, New Moyer asserted that its population was "severely underprivileged, underserved and underprepared" in that 75% of the current student body was new to the school; 32% of the student body was identified as special needs students; and the students who attend the school had reading proficiencies that, on average, were three grade levels below their target grade level.[101] New Moyer further explained that, despite turnover in its special education department, it hired a Special Education Director in February 2014, who in turn hired three special education teachers and four paraprofessionals for the 2014-2015 academic year.[102] As to the suspension rate, New Moyer noted that its "zero tolerance approach" to disciplinary infractions was perhaps an "overcorrect[ion]," and that it had submitted to have an on-campus School Resource Officer.[103]

---

[100] Pls.' Ex. 20.

[101] *Id.* at CW000730 ("6th grade is reading on average at a 5th grade level; 7th grade is reading on average at a 4th grade level; 8th grade is reading on average at a 4th grade level; 9th grade is reading on average at a 6th grade level; [and] 10th grade is reading on average at a 7th grade level.").

[102] *Id.* at CW000732.

[103] *Id.* at CW000734. New Moyer also represented that it would not seek a charter renewal if it did not make significant improvements:

> The State has our further commitment, and we will make it binding in whatever fashion the State desires, that should we not make significant improvements in special education documentation and reporting during this school year and show measurable growth in student achievement during that same time, the [Moyer] Board will not seek renewal at the end of its charter term."

*Id.* at CW000730.

On August 29, 2014, the Committee held a public meeting in Dover, Delaware. Seven representatives of New Moyer, including two members of the Moyer Board, attended, as well as two representatives from the public.[104] At this meeting, the Committee unanimously agreed that New Moyer was noncompliant with four of the seven areas identified in the Secretary's Formal Review notice: (i) academic performance; (ii) special education services;[105] (iii) educational programming; and (iv) school discipline.[106] Before the Committee voted on its recommendation to the Department regarding the appropriate remedial measures, one Committee member noted how he did not consider probation appropriate for New Moyer:

> [The Committee member] also stated that, if areas of noncompliance in student achievement were not as significant as they are and the previous two years had not been as difficult as they were, it would be easier to recommend probation and place faith in [New] Moyer. He explained that there was too much history over the last two years and the issues concerning services to Special Education students make it difficult to set aside.[107]

A majority of the Committee then voted (by a 3-0 vote, with one member abstaining) to recommend that New Moyer's charter be revoked, effective June 30, 2015.[108]

---

[104] Pls.' Ex. 39 at CW000747; *see also* Pls.' Ex. 34.

[105] The Committee's report for the August 29 meeting references that, of the 67 out of 68 IEPs that had been found noncompliant, 29 remained noncompliant and that the Department would be returning to New Moyer in September to determine whether these 29 IEPs have been brought into compliance. Pls.' Ex. 39 at CW000748-49.

[106] *Id.* at CW000751.

[107] *Id.*

[108] *Id.*

On September 5, 2014, the Committee issued its Final Report, which recommended, for the four reasons listed at its August 29 meeting, revocation of New Moyer's charter, effective June 30, 2015.[109]  New Moyer was given the opportunity to respond in writing to the Final Report by September 15, 2014, but New Moyer declined to do so.[110]

## J.      The Secretary and the State Board Revoke New Moyer's Charter

On September 10, 2014, the Department and the State Board held a joint public hearing in Wilmington, Delaware to discuss the Committee's Final Report.[111]  The transcript of this joint hearing reflects that: (i) on July 19, 2014, New Moyer was notified of the hearing; (ii) on August 18, 2014, a notice of the hearing was placed on the Department's website and on the State's online public meeting calendar; and (iii) also on August 18, a notice of the hearing was published in *The News Journal* and *Delaware State News*.[112]  Six representatives of New Moyer, including three Moyer Board members and its principal, made comments on the record.[113]

---

[109] Pls.' Ex. 39.  Plaintiffs contend that the Final Report did not specifically address New Moyer's request to modify its charter to change its English Language Arts and Math instruction from K12 to SpringBoard, but the SpringBoard curriculum was one of the subjects discussed at this meeting.  A Committee member "clarified for the record that [New] Moyer is still implementing SpringBoard notwithstanding the fact that the recent charter modification application was denied."  *Id.* at CW000749.

[110] Nagourney Aff. ¶ 10.

[111] Pls.' Ex. 40.

[112] *Id.* at CW000756; Nagourney Aff. ¶ 7.

[113] Pls.' Ex. 40 at CW000758, 763, 768, 771, 774, 779.

On October 9, 2014, at a public meeting of the State Board, the Secretary announced his decision to accept the recommendations of the Committee's Final Report to revoke New Moyer's charter, effective June 30, 2015.[114] The Secretary explained that the Final Report "highlight[s] significant problems with the school's academic performance and its program," specifically noting:

- New Moyer "is at the bottom of the traditional district schools and charter schools in regards to student achievement";

- The percentage of students at New Moyer who tested proficient for the 2013-2014 academic year was 10% in Math, 23% in English Language Arts, 6% in Science, and 0% in Social Studies;

- The proficiency scores of New Moyer's students for the 2013-2014 academic year were lower than the proficiency scores for the 2012-2013 academic year, "which also fell far below state averages"; and

- Significant challenges the school faced with respect to special education needs, including the requirements for IEPs and adequate staffing.[115]

---

[114] Pls.' Ex. 41 at CW001154.

[115] *Id.* In summation, the Secretary stated:

> While the public record makes clear the school's dedication to improvement, my decision must be based upon evidence and not intentions. The accountability committee has determined that the school has failed to comply with its charter and satisfy in its operation of the school the criteria set forth in the charter law. To note specifically two areas, the school has failed to meet the academic standards and special education services criteria.

*Id.* After the revocation decision had been made, the Secretary spoke at a meeting of the Wilmington City Council and discussed the reasons why the Department was recommending a new assessment test for the State. Plaintiffs contend that the Secretary stated that Delaware's current testing standards, the performance on which was a basis for the decision to revoke New Moyer's charter, were unreliable. Pls.' Op. Br. 25. Based on my review of the relevant parts of the recording identified by Defendants, Defs.' Ans.

The State Board then unanimously agreed (by a 7-0 vote) with the Secretary to revoke New Moyer's charter.[116]

On October 13, 2014, sixty-one working days (excluding the Labor Day holiday) after the Secretary's Formal Review notice, the Secretary notified New Moyer by letter of his and the State Board's decision to revoke New Moyer's charter, effective June 30, 2015.[117] The letter outlined the four areas of noncompliance that formed the basis for the revocation decision: (i) academic performance (pursuant to New Moyer's Performance Agreement); (ii) special education services (pursuant to Section 512(7) of the Charter School Act); (iii) educational programming (pursuant to Section 512(6) of the Charter School Act); and (iv) discipline and attendance (pursuant to Section 512(11) of the Charter School Act).[118]

### K.    Procedural History

On November 25, 2014, three Individual Plaintiffs and the City of Wilmington filed an action (C.A. No. 10398) against the Department, the Secretary, the State Board,

---

Br. 32-33 n.21, the Secretary noted how the Department wanted to improve on what was already "one of the most sophisticated assessments in the country."

[116] Pls.' Ex. 41 at CW001155. Plaintiffs note that neither the Secretary nor the State Board acknowledged at the October 9 meeting that New Moyer had, as of the September 19 deadline, satisfied Prong 1 of its Compliance Agreement for special education services. Although Plaintiffs are correct, it bears mention that the public comment period for the revocation decision closed on September 15 (before the September 19 deadline). *See Formal Review Process Timeline*, referenced *supra.* at n. 92.

[117] Pls.' Ex. 43.

[118] *Id.* at CW000824-25.

and each of its members. On November 26, 2014, five other Individual Plaintiffs and New Moyer filed another action (C.A. No. 10402) against the Department, the Secretary, and the State Board. On December 2, 2014, I entered an order consolidating these two actions.

On December 3, 2014, I granted the parties' stipulated order for expedited proceedings. On December 5, 2014, Plaintiffs filed a Consolidated Complaint.[119]

On December 19, 2014, Plaintiffs moved for a preliminary injunction "enjoining Defendants from implementing the decision revoking New Moyer's charter and closing the New Moyer School at the close of the current school year (June 2015)." Plaintiffs request a ruling before January 14, 2015, the deadline for students to apply to the school of their choice under the Delaware School District Enrollment Choice Program (the "Choice Program").

Also on December 19, 2014, Defendants moved to dismiss the Consolidated Complaint under Court of Chancery Rule 12(b)(6) for failure to state a claim. On January 2, 2015, I heard oral argument on Plaintiffs' motion for a preliminary injunction and Defendants' motion to dismiss.

---

[119] The Consolidated Complaint asserts seven causes of action: failure to comply with the Delaware Choice Program (Count I); further violation of the Charter School Act (Count II); due process (Count III); breach of charter contract (Count IV); breach of implied covenant (Count V); *parens patriae* claims (Count VI); and arbitrary and capricious decision-making (Count VII).

Given the exigencies of Plaintiffs' preliminary injunction application, this opinion addresses the issues necessary to resolve Plaintiffs' motion, but I also have considered the parties' briefing on Defendants' motion to dismiss.

## III. LEGAL ANALYSIS

### A. The Legal Standard

"[A] motion for preliminary injunctive relief requires [the Court] to take a step that, procedurally speaking, is extraordinary: to make a 'preliminary' determination of the merits of a cause before there can be a final adjudication of [Plaintiffs'] claims."[120] To obtain a preliminary injunction, Plaintiffs must establish three elements: (i) a reasonable probability of success on the merits; (ii) irreparable harm absent interim relief; and (iii) that the balance of the equities favors the relief requested.[121] "This burden is not a light one, and an 'extraordinary remedy' like a preliminary injunction 'will never be granted unless earned.'"[122] Although "[a] strong showing on one element may overcome a weak showing on another element," Plaintiffs must still demonstrate all three elements.[123]

---

[120] *Frazer v. Worldwide Energy Corp.*, 1987 WL 8739 (Del. Ch. Feb. 19, 1987), reprinted at 13 Del. J. Corp. L. 294, 303 (1987).

[121] *See Revlon, Inc. v. MacAndrews & Forbes Hldgs., Inc.*, 506 A.2d 173, 179 (Del. 1986).

[122] *Wayne Cty. Empls.' Ret. Sys. v. Corti*, 954 A.2d 319, 329 (Del. Ch. 2008) (quoting *Lenahan v. Nat'l Computer Analysts Corp.*, 310 A.2d 661, 664 (Del. Ch. 1973)).

[123] *See Cantor Fitzgerald, L.P. v. Cantor*, 724 A.2d 571, 579 (Del. Ch. 1998).

## B. Reasonable Probability of Success on the Merits

In support of their preliminary injunction application, Plaintiffs advance claims that "collectively comprise a due process claim or set of claims under the Fourteenth Amendment" of the United States Constitution.[124] The precise demarcation of Plaintiffs' constitutional claims is unclear. Plaintiffs asserted both procedural and substantive due process challenges in their briefs concerning the decision to revoke New Moyer's charter, although they acknowledged at oral argument that their due process claims are primarily procedural and not substantive.[125] Because the City of Wilmington concedes that its claims as *parens patriae* are identical to those of the Individual Plaintiffs' claims,[126] I address only the claims of the Individual Plaintiffs and New Moyer in this opinion.

### 1. Procedural Due Process Claim

The Due Process Clause of the Fourteenth Amendment provides, "[N]or shall any State deprive any person of life, liberty, or property, without due process of law." When a plaintiff asserts a violation of the Due Process Clause, the threshold question "is

---

[124] Pls.' Op. Br. 43.

[125] Tr. of Oral Arg. 10 ("I don't think we are arguing that this is primarily a substantive due process case."), 40 ("The parties have focused on procedural due process in the briefing.").

[126] Pls.' Reply Br. 26 n.12 ("[T]he claims of the Individual Plaintiffs and the City are identical[.]"); *see also Harden v. Christina School Dist.*, 924 A.2d 247, 267 n.120 (Del. Ch. 2007).

whether the plaintiff has been deprived of a protected interest in 'property' or 'liberty.'"[127]

A property interest entitled to procedural due process under the Due Process Clause is created and defined not by the Constitution, but rather by "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits."[128] "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it."[129]

As a general matter, "[w]hen the decision to grant or withhold a benefit is entrusted to the discretion of a government actor, one has no constitutional property interest in obtaining that relief."[130] "If the decisionmaker is not 'required to base its decisions on objective and defined criteria,' but instead 'can deny the requested relief for any constitutionally permissible reason or for no reason at all,' the State has not created a constitutionally protected . . . interest."[131] In other words, there is no protected property

---

[127] *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 59 (1999) (citations omitted).

[128] *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972).

[129] *Id.*

[130] *Suryanto v. Att'y Gen. of U.S.*, 398 F. App'x 830, 834 (3d Cir. 2010) (citing *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 564 (1981)).

[131] *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983) (finding no legitimate claim of entitlement where there were "no standards governing the administrator's exercise of his discretion" to transfer an inmate) (citation omitted).

32

interest where the decision to remove a benefit is left to the "unfettered discretion" of the government actor.[132] Conversely, the State may create a constitutionally protected interest by placing a "substantive limitation on official discretion" to grant, deny, or remove a benefit.[133]

### a. New Moyer Has No Protected Property Interest[134]

New Moyer contends that the charter it received from the Department to operate a school is "a government license, not a contract," and thus constitutes a protected property

---

[132] *See Roth*, 408 U.S. at 566-67 (concluding a nontenured university professor had no property interest in his position because "State law . . . clearly leaves the decision whether to rehire a nontenured teacher for another year to the unfettered discretion of university officials.").

[133] *See Mullen v. Thompson*, 155 F. Supp. 2d 448, 452 (W.D. Pa. 2001) (citing *Olim*, 461 U.S. at 249-50) ("[S]tate law that establishes purely procedural rules does not create federal due process rights. Rather, only those state laws that place a substantive limitation on official discretion in the decision to grant or deny the benefit itself—not in the process leading to that decision—create a property interest that is entitled to constitutional protection under the Due Process clause.") ("*Mullen I*"), *aff'd*, 31 F. App'x 77 (3d Cir. 2002); *see also Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11-12 (1979) ("accept[ing] respondents' view that the expectancy of release provided in [a] statute is entitled to some measure of constitutional protection" where the state statute provided that the board of parole "shall order" the release of a committed offender who is eligible for release on parole unless the board determines that the release should be deferred for one of four enumerated reasons); *Griffeth v. Detrich*, 603 F.2d 118, 121 (9th Cir. 1979) (finding a legitimate claim of entitlement for "persons who claim to meet the eligibility requirements" where the state's welfare application regulations were "comprehensive and definite" and "greatly restrict[ed] the discretion of the intake eligibility worker").

[134] Defendants challenge New Moyer's standing to assert any claims in this action. For purposes of Plaintiffs' preliminary injunction motion only, I assume that New Moyer has standing.

interest.[135]  In opposition, Defendants argue that, because "the decision to withhold, grant, or revoke a public school charter is a discretionary one," the charter New Moyer received from the Department was a "privilege" and thus not a protected interest.[136]

In my opinion, New Moyer does not have a constitutionally protected property interest in its charter because, under Delaware law, the Department's decision to revoke its charter was discretionary. In adopting the Charter School Act, the General Assembly created a statutory scheme governing the Department's oversight of Delaware charter schools. A charter may be issued by an approving authority (*i.e.*, a public school district or the Department) with the approval of the State Board.[137]  The Charter School Act prescribes certain actions an approving authority must take, and others are left to the approving authority's discretion. I conclude, for the reasons that follow, that the Department's decision to revoke New Moyer's charter falls within the latter category.

The Department's decision to revoke New Moyer's charter implicates Sections 515(f) and 516(2) of the Charter School Act. Under Section 516(2), an approved charter "shall be subject to revocation or probation, after the exercise of due diligence and good faith," if the approving authority (here, the Department) determines that "[t]he school fails to comply with its charter or to satisfy, in its operation of the school, the criteria set

---

[135] Pls.' Op. Br. 48.

[136] Defs.' Ans. Br. 36.

[137] 14 *Del. C.* § 503.

forth in [Section] 512."[138]  Thus, the Department's determination under Section 516(2) about whether New Moyer's charter was *subject* to possible revocation or probation uses the mandatory "shall" and is qualified by reference to the sixteen criteria specified in Section 512, which are the conditions required for the issuance of a charter.  Critically, however, under Section 515(f), the ultimate decision *to revoke* a charter is permissive as the statute uses the term "may" and is not qualified by reference to any criteria:

> If the approving authority determines that the criteria for remedial action set forth in § 516 of this title have been satisfied, it **may revoke** the charter and manage the school directly until alternative arrangements can be made for students at the school or place the school on a probationary status subject to terms determined by the approving authority which are directly relevant to the violation or violations.[139]

In my view, the ability of the Department to revoke a charter is discretionary because there are no substantive limits on the Department's decision-making process.  Although the Department does not have the discretion to revoke a charter unless that charter is subject to revocation under Section 516, once a charter is subject to revocation, Section 515(f) affords the Department the discretion to revoke or not to revoke it.  No provision of the Charter School Act sets forth any criteria that mandates or prohibits revocation under Section 515(f).  Because the Department's decision to revoke a charter ultimately

---

[138] 14 *Del. C.* § 516(2).  A charter shall also be subject to revocation or probation if, after the exercise of due diligence and good faith, the approving authority determines that "[t]he school, or its representatives, has committed a material fraud on the approving authority or misappropriated federal, state or local funds."  14 *Del. C.* § 516(1).

[139] 14 *Del. C.* § 515(f) (emphasis added).

is discretionary and not subject to any substantive limits, I conclude that New Moyer has no legitimate claim of entitlement to the four-year charter it received.[140]

My conclusion is supported by Chief Judge Stark's recent decision in *Reach Academy for Boys and Girls, Inc. v. Delaware Department of Education*,[141] in which he addressed whether students had a protected property interest in a charter where the Department decided not to renew the charter after its initial term. Under Section 514A(b) of the Charter School Act, the Department has the authority to decide, at the end of a charter's term, whether to renew the charter: a charter "***may*** be renewed for successive 5-year terms."[142] There is no mandatory "shall" or objective criteria that prescribes, one way or the other, whether to renew a charter. Focusing on the use of the word "may" in Section 514A(b), Chief Judge Stark concluded that the plaintiffs—individual students who attended the charter school—had no constitutionally protected property interest in

---

[140] New Moyer also asserts that the Performance Agreement is a basis for its constitutionally protected property interest. I disagree. The language of the Performance Agreement, providing that it would "continue in full force and effect during the term of the school's charter," does not supersede or otherwise restrict the Department's discretion under Section 515(f) to revoke New Moyer's charter before its expiration. The Department perhaps could have entered into such an arrangement with New Moyer, but such an agreement would have vastly different provisions than the one-sided terms of the Performance Agreement, which impose no obligations on the Department and expressly recognize the Department's right to place a charter on formal review. *See supra* note 57. Thus, New Moyer has no legitimate claim of entitlement as a Constitutional matter to its charter under the Performance Agreement.

[141] 2014 WL 2445804, -- F. Supp. 2d – (D. Del. May 30, 2014), *modifying* 8 F. Supp. 3d (D. Del. 2014).

[142] 14 *Del. C.* § 514A(b) (emphasis added).

the school's charter because the Charter School Act vested the Department "with the discretion to renew or not renew charters."[143]

The use of the "may" in Section 515(f)—without any specific criteria to guide the Department's determination of whether a charter subject to revocation should actually be revoked—is analytically similar to the use of the "may" in Section 514A. Although Section 515(f) operates differently than Section 514A(b) in that only Section 515(f) references the criteria incorporated into Section 516, this is a distinction without a difference in my view. There is no statutory analogue for when a charter "shall be subject" to renewal because there is no need for one. By its terms, a charter exists for a specified term and then expires.

The ultimate decision under Section 515(f) whether to revoke a charter subject to revocation, much like the decision under Section 514A(b) whether to renew a charter whose term is about to expire, is within the discretion of the Department. Thus, just as in *Reach Academy*, where Chief Judge Stark concluded that the plaintiffs did not have a constitutionally protected interest in a charter because the Department had discretion under Section 514A(b) to decide whether or not to renew a charter,[144] I conclude that New Moyer does not have a constitutionally protected property interest in its charter because the Department has the discretion under Section 515(f) to decide whether or not to revoke the charter.

---

[143] *Reach Academy*, 2014 WL 2445804, at *7. *Reach Academy*, like this case, involved a preliminary injunction motion and a motion to dismiss for failure to state a claim.

[144] *See id.*

This conclusion also is consistent with the substantial authority cited by Defendants finding there to be no constitutionally protected interest in a charter school, both in the context of addressing revocation of a charter[145] and non-renewal of a charter.[146] New Moyer, by contrast, relies solely on *Northside Urban Pathways Charter School v. State Charter School Appeal Board.*[147] That case is inapposite.

The key issue before the *Northside Urban* court was whether a Pennsylvania state agency had subject matter jurisdiction to hear an appeal of a school district's decision to deny a charter school's charter modification request.[148] Although the court noted that a

---

[145] *See, e.g.*, *Project Reflect, Inc. v. Met. Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d 868, 878 (M.D. Tenn. 2013) (concluding that a charter school did not have a constitutionally protected interest in its charter under Tennessee law because the statutory provision governing charter revocation "uses the language of discretion, not entitlement, and only minimally conditions that exercise of discretion"); *see also Project Sch. v. City of Indianapolis*, 2012 WL 3114573, at *3 (S.D. Ind. July 31, 2012) (concluding that there was no protected property interest in a charter under Indiana law because "the charter school statute frames the decision to revoke a charter as a discretionary matter").

[146] *Pinnacle Charter Sch. v. Bd. of Regents of the Univ. of N.Y.*, 969 N.Y.S.2d 318, 320-21 (N.Y. App. Div. 2013) ("[T]he New York Charter Schools Act . . . creates no constitutionally protected property interest in the renewal of a charter[.]"); *State v. Williamson*, 141 S.W.3d 418, 427-28 (Mo. Ct. App. 2004) ("[J]ust as a prospective charter school has no protected property interest at stake regarding an initial charter application, the school also has no protected property interest under the [Missouri] Charter Schools Act with regard to renewal of its charter.").

[147] 56 A.3d 80 (Pa. Commw. 2012).

[148] *Id.* at 84 (citing *Foreman v. Chester-Upland School Dist.*, 941 A.2d 108, 115 (Pa. Commw. 2008) (concluding, in determining whether a state agency had authority to modify a charter as a contract, that "the relationship between a school district and a charter school is not contractual, but regulatory")).

"charter school has a protected property interest in its charter"[149] under the Pennsylvania Charter School Law, the court did not address the significance of statutory provisions like those in the Delaware Charter School Act, discussed above, which expressly afford the approving authority the discretion to decide whether or not to renew or revoke a charter.

> b. **The Individual Plaintiffs Have No Protected Property Interest**

The Individual Plaintiffs contend they have a protected property interest in New Moyer's charter under the Due Process Clause because Delaware law "grants an express entitlement to the students of choice schools to graduate from their school of choice."[150] In support, the Individual Plaintiffs rely exclusively on their interpretation of Section 407(a)(1) of the Choice Program, which provides that "a pupil accepted for enrollment" in a choice school "shall be entitled to remain enrolled therein until graduation from the school."[151] Based solely on this statute, the Individual Plaintiffs contend that the State must provide (and has failed to provide) appropriate procedural due process before depriving them of their property interest in graduating from New Moyer.[152]

Defendants, in opposition, contend that the Individual Plaintiffs do not have a legally protected property interest in New Moyer's charter because Delaware students do not have a State-created right to graduate from a particular school. Specifically,

---

[149] *Id.*

[150] Pls.' Op. Br. 47.

[151] 14 *Del. C.* § 407(a)(1).

[152] Pls.' Reply Br. 15-17; Pls.' Op. Br. 47-48.

Defendants argue that the Individual Plaintiffs' proffered interpretation of Section 407(a)(1) of the Choice Program directly conflicts with the plain language of Section 516(2) of the Charter School Act, which permits the Department to revoke New Moyer's charter, and thereby close the school, if it fails to comply with its obligations under its charter.[153] Read together, according to Defendants, Section 407(a)(1) "generally allows a student to remain enrolled until graduation at a school that remains open and operational," while Section 516(2) "applies to the determination of whether a charter school remains in compliance with statutory requirements and its charter."[154] I agree.

In my opinion, Section 407(a)(1) of the Choice Program does not provide Delaware students a legitimate claim of entitlement to graduate from a school at which they are enrolled.[155] The Choice Program, particularly Section 407, is a student-centered statute. Section 407(a)(1) provides, in relevant part:

---

[153] Defs.' MTD Op. Br. 26-27.

[154] *Id.* 28.

[155] My analysis of the meaning of Section 407 is guided by familiar principles of statutory interpretation:

> In interpreting a statute, Delaware courts must ascertain and give effect to the intent of the legislature. If the statute is found to be clear and unambiguous, then the plain meaning of the statutory language controls. . . . [A] statute is ambiguous only if it is reasonably susceptible of different interpretations, or if a literal reading of the statute would lead to an unreasonable or absurd result not contemplated by the legislature. . . . Courts also should ascribe a purpose to the General Assembly's use of statutory language, and avoid construing it as surplusage, if reasonably possible.

*In re Krafft-Murphy Co., Inc.*, 82 A.3d 696, 702 (Del. 2013).

(a)(1) A pupil accepted for enrollment in a school or program pursuant to this chapter shall be entitled to remain enrolled therein until graduation from the school or completion of the program provided that the pupil continues to meet the requirements for such school or program[.]

The plain language of Section 407(a)(1) means that, once a choice school accepts a student for enrollment, that school may terminate the student's enrollment for only certain specified reasons. Similarly, Section 407(a)(2), which is not at issue here, limits the ability of a student accepted for enrollment at a choice school to change his or her choice school during a two-year period to only certain specified reasons.

Although Section 407(a)(1) is to be construed broadly,[156] a necessary and fundamental implication of Section 407(a) is that a school must be *open* for these Choice Program protections to attach. As Plaintiffs recognized at oral argument, the protections of Section 407 are available only if, for example, the school is adequately funded.[157] In the case of New Moyer, this means that the protections of Section 407(a) are available only *if the school has a charter to operate*.

Plaintiffs' interpretation of Section 407 is plainly incorrect in my view because it would allow the student-centered provision of Section 407 to eviscerate the school-centered provisions of the Charter School Act and the General Assembly's express directive for the Department to oversee public education in the State, which includes the

---

[156] 14 *Del C.* § 401(b) ("It is therefore the intent of the General Assembly that this chapter be construed broadly to maximize parental choice in obtaining access to educational opportunities for their children.").

[157] Tr. of Oral Arg. 11-12.

authority to revoke and to not renew a charter.  Nothing in Section 407 indicates that the General Assembly intended the statute to have this effect.

In light of the distinct subject matters addressed by the Choice Program and the Charter School Act, both of which were adopted by the General Assembly on July 10, 1995, I conclude that Section 407(a)(1) was not intended to create a legitimate claim of entitlement that would prevent the Department from exercising its statutory discretion under Section 515(f) to revoke New Moyer's charter unless it satisfied the Individual Plaintiffs' rights under the Due Process Clause.[158]  In short, neither Section 407(a) nor any other provision of the Delaware Constitution, Delaware statutory law, or Delaware common law that has been identified endows Delaware students with the right to graduate from a particular school.[159]  Thus, I conclude that the Individual Plaintiffs do not have a protected property interest in graduating from New Moyer.

---

[158] The fact that, as discussed above, the Department has broad discretion in determining whether to renew a charter is further legal support for my conclusion that Delaware students do not have a constitutionally protected interest in attending New Moyer. *See Reach Academy*, 2014 WL 2445804, at *7 ("The interest Plaintiffs assert, the renewal of Reach's charter, is not an interest protected by the Fourteenth Amendment's Due Process Clause.").

[159] *Accord Mullen v. Thompson*, 31 F. App'x 77, 79 (3d Cir. 2002) ("[Pennsylvania students] have no constitutionally cognizable property or liberty interest in attending the individual school of their choice."); *Pocono Mountain Charter School v. Pocono Mountain School Dist.*, 442 F. App'x 681, 685 n.5 (3d Cir. 2011) ("[S]tudents do not have a cognizable liberty or property interest in going to a school of their choice.").

### c. Even if New Moyer and the Individual Plaintiffs Had Protected Property Interests, They Received Due Process

"Only after finding the deprivation of a protected interest [does the Court] look to see if the State's procedures comport with due process."[160]  Assuming, for the sake of argument, that New Moyer had a protected interest in its charter and that the Individual Plaintiffs had a protected interest in graduating from New Moyer, Plaintiffs have still failed to show a reasonable probability of success on their procedural due process claims.

Plaintiffs' procedural due process challenges are straightforward.  They contend that Defendants gave inadequate notice on the Department's website about the Formal Review notice.  They also contend that Defendants "failed to provide Plaintiffs with ample opportunity to be heard" by (i) not permitting a reasonable opportunity to introduce evidence, to examine witnesses, or to make argument; and (ii) holding the Committee's public hearing in Dover.[161]  In response, Defendants have submitted evidence disputing Plaintiffs' contention concerning the website and further assert that the requirements of the Due Process Clause are flexible such that a trial-like proceeding was not "required or warranted" to revoke New Moyer's charter.[162]  Thus, Defendants argue that the statutorily prescribed process they undertook provided "more than ample notice and an opportunity to be heard" than the Due Process Clause requires.[163]

---

[160] *Sullivan*, 526 U.S. at 59.

[161] Pls.' Op. Br. 52.

[162] Defs.' Ans. Br. 50.

[163] *Id.*

"The essence of due process is the requirement that 'a person in jeopardy of serious loss (be given) notice of the case against him and opportunity to meet it.'"[164] "The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement."[165] In *Mathews v. Eldridge*, the United States Supreme Court set forth several factors that a court must balance in determining the procedural process due in a given situation:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.[166]

The *Mathews* test, as the Supreme Court has repeatedly recognized, is one of "flexibility."[167]

---

[164] *Mathews v. Eldridge*, 424 U.S. 319, 348 (1976) (citation omitted).

[165] *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985).

[166] *Mathews*, 424 U.S. at 335.

[167] *Heller v. Doe*, 509 U.S. 312, 332 (1993) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 13 (1979)).

Plaintiffs contend that "procedural due process can also be offended when governmental action violates protected rights in an arbitrary and capricious manner." Pls.' Reply Br. 27. They cite two cases for support: (i) *Ridings v. Unemployment Insurance Appeal Board*, 407 A.2d 238 (Del. Super. 1979), in which the plaintiff alleged a lack of procedural due process because he could not testify in support of his claim before the state unemployment benefits board; and (ii) *Chung v. Park*, 514 F.2d 382, 387 (3d Cir. 1975), in which a terminated college professor challenged, on due process grounds, the procedures imposed at a pre-termination hearing before an arbitration panel. In my opinion, when the quotations cited by Plaintiffs from *Ridings* and *Chung* are analyzed in context, they are not persuasive support for Plaintiffs' argument. In any

44

In my opinion, Plaintiffs received adequate due process of the Department's decision to revoke New Moyer's charter. It is undisputed that New Moyer received the Formal Review notice and Defendants have submitted an affidavit, which I credit, attesting that the notice was available on the Department's website from July 18, 2014 (the day after the Formal Notice was issued) until November 7, 2014, by which time the revocation decision had been made and announced publicly.[168] No evidence has been submitted that anyone who wished to attend the Committee's hearing on August 5, its meeting on August 29, or the State Board and Department's joint hearing on September 10 was unaware of the opportunity to do so, or that the statutorily required notice of those hearings was not provided.[169]

The record further reflects that Defendants followed the process required by the Charter School Act[170] before revoking New Moyer's charter, including:

- On July 17, 2014, providing the Formal Review notice to New Moyer;

- Appointing the Committee to conduct a review;

- On August 5, 2014, holding a meeting between the Committee and New Moyer to discuss the areas of concern identified in the Formal Review notice;

---

event, Plaintiffs' contention is inconsistent with the United States Supreme Court's more recent precedents cited above, including *Mathews* and its progeny, which focus the procedural due process inquiry on the provision of notice and an opportunity to be heard.

[168] *See supra* note 93.

[169] *See* 29 *Del. C.* § 10004(e).

[170] 14 *Del. C.* §§ 515(b)-(d).

- On August 5, 2014, holding a public hearing in Dover before the Committee issued its Initial Report;

- Providing New Moyer the opportunity to review and comment on the Committee's Initial Report by August 22, 2014;

- On August 29, 2014, holding a public meeting in Dover to discuss the Committee's Initial Report and New Moyer's response;

- Providing New Moyer the opportunity to review and comment on the Committee's Final Report by September 15, 2014; and

- On September 10, 2014, holding a joint public hearing of the Department and the State Board in Wilmington to discuss the Committee's Final Report.

In sum, throughout this process, New Moyer was given adequate notice and a meaningful opportunity to be heard before the Department revoked its charter. In fact, numerous New Moyer representatives attended Committee meetings and the public hearings, and New Moyer submitted a written response to the Committee's Initial Report. New Moyer's decision not to respond in writing to the Committee's Final Report does not change the fact that New Moyer had a meaningful opportunity to do so.

Given the respective interests of Plaintiffs and Defendants under the *Mathews* test, the Due Process Clause did not require, in my view, that Plaintiffs have the opportunity to formally introduce evidence,[171] to examine witnesses, or to make argument at a trial-like proceeding. In my opinion, those additional procedures are not warranted given the procedures already in place under the Charter School Act, and any arguable benefit derived from them would be outweighed by the significant fiscal, administrative, and

---

[171] As discussed above, Plaintiffs were afforded the opportunity to submit written comments to the Committee and did so on at least one occasion.

logistical burdens of imposing such requirements on the approving authority whenever it is necessary to determine whether any of the over 30 charter schools in Delaware[172] is violating the terms of its charter and whether remedial measures should be ordered—a process that is to be completed within 60 working days.[173]

Finally, I am not persuaded that Defendants acted unconstitutionally by holding the Committee's public meetings and a public hearing in Dover, where the main office of the Department is located, as opposed to Wilmington. Plaintiffs do not suggest the Committee was legally required to meet in Wilmington, and they have not offered any evidence that Defendants' decision to hold those hearings in the State capital was out of the ordinary for that type of proceeding. The final public hearing held by the Department and the State Board on September 10, moreover, was held in Wilmington.

For the reasons explained above, even assuming *arguendo* that New Moyer had a protected interest in its charter and/or that the Individual Plaintiffs had a protected interest in graduating from New Moyer, Plaintiffs have failed to demonstrate a reasonable probability of success on the merits of their procedural due process claims.

---

[172] I take judicial notice of the number of charter schools currently operating in Delaware because this fact is not subject to reasonable dispute. *See About Us*, Delaware Charter Schools Network, *available at* http://decharternetwork.org/About-Us. D.R.E. 201(b).

[173] 14 *Del. C.* § 515(c).

### d. Plaintiffs Have Failed to Show a Reasonable Probability of Demonstrating that Defendants Violated the Charter School Act Procedures

Plaintiffs argue that the Department failed to comply with the Charter School Act in two respects when it revoked New Moyer's charter: (i) by not revoking New Moyer's charter effective immediately as opposed to making the revocation effective at the end of the 2014-15 school year; and (ii) by sending the Secretary's letter formally revoking New Moyer's charter 61 days after the Formal Review notice, which is one day after the 60-working-day deadline in Section 515(b).[174] Plaintiffs contend that these alleged violations deprived Plaintiffs of a protected interest in violation of the Due Process Clause.[175] Assuming, without deciding, that Plaintiffs' legal theory is viable, Plaintiffs are unlikely to succeed on the merits of either claim in my view.

As to the first claim, Section 515(f) provides that the Department "may revoke the charter and manage the school directly until alternative arrangements can be made for students at the school or place the school on a probationary status."[176] Although this language implies that the Department may revoke a charter immediately, nothing in the statute expressly addresses when a revocation decision must become effective. Nor does the statute expressly prohibit the Department from making a revocation effective at a future date. In another context, the General Assembly's use of the word "may" has been

---

[174] Pls.' Reply Br. 20; Pls.' Op. Br. 50-51.

[175] Pls.' Reply Br. 17-18 n.10.

[176] 14 *Del. C.* § 515(f).

interpreted to mean "a permissive approach that authorizes [action] by the means specified, but not ruling out [action] by other means."[177] In my opinion, interpreting Section 515(f) in this manner is consistent with the apparent intent of the statute to facilitate an orderly transition for the students when the Department decides to revoke a charter.[178] Thus, I conclude that, under Section 515(f), the Department has the discretion, which it exercised with respect to New Moyer's charter, to revoke a charter effective at a future date.[179]

As to the second claim, assuming that Plaintiffs' interpretation of the 60-working day requirement is correct,[180] which I need not decide, a one-day violation of the 60-

---

[177] *See, e.g.*, *Biolase, Inc. v. Oracle P'rs, L.P.*, 97 A.3d 1029, 1033-34 (Del. 2014) (concluding that it was "sensible and reasonable" to interpret 8 *Del. C.* § 141(b), which provides that a director "may resign . . . upon notice given in writing," to not preclude a director from resigning orally).

[178] *See also* 14 *Del. C.* § 515(i) ("In the event of a charter school closure for any reason, the approving authority shall oversee and work with the closing school to ensure a smooth and orderly closure and transition for students, parents and employees, as guided by the closure protocol.").

[179] Plaintiffs' Section 515(f) challenge is curious. Given that Plaintiffs are seeking to preserve the ability of the current Board to oversee the management of New Moyer until the end of the 2015-16 school year, it is surprising that they would object to the current management structure not being displaced immediately.

[180] None of the parties submitted any legal authority interpreting the 60-working day requirement in Section 515(c). Defendants contend that, although the Secretary did not send his letter notifying New Moyer of the decision to revoke its charter until 61 working days after the Formal Review notice was issued, the decision had been publicly announced, and thus was "issued" within the meaning of Section 505(c), at the public hearing held on October 9, 2014, which was within the required 60-working day period. Defs.' Ans. Br. 53. There is also a legitimate argument that the 60-working-day requirement is merely directory rather than truly mandatory. *See, e.g.*, *Bartley v. Davis*, 519 A.2d 662, 667 (Del. 1986) ("There is no universal standard or test for determining

working day deadline in Section 515(c) is hyper-technical and does not amount to a constitutional violation of due process. Plaintiffs have not shown any prejudice from the one-day delay, let alone prejudice that, without more, would constitute a violation of the Due Process Clause.

## 2. Substantive Due Process Claim

As Plaintiffs acknowledged at oral argument, the thrust of their application for a preliminary injunction is predicated on their procedural due process claims addressed above. Insofar as Plaintiffs raised substantive due process claims in their briefs, they can be addressed in short order.

Under the Third Circuit's decision in *Nicholas v. Pennsylvania State University*,[181] which cites extensive supporting authority and which I find to be persuasive here, the protections of substantive due process attach only where a plaintiff has demonstrated deprivation of an interest that is considered a "fundamental" right under the United States Constitution.[182] Defendants contend that any protected interest of Plaintiffs, if it exists,

---

whether a statute is directory or mandatory. . . . The question is, what did the legislature intend that the consequences of noncompliance with the statutory command be?").

[181] 227 F.3d 133 (3d Cir. 2000).

[182] *Id.* at 140 (citing, *inter alia*, *Nilson v. Layton City*, 45 F.3d 369, 372 (10th Cir. 1995); *McKinney v. Pate*, 20 F.3d 1550, 1556 (11th Cir. 1994) (en banc); *Sutton v. Cleveland Bd. of Educ.*, 958 F.2d 1339, 1351 (6th Cir. 1992); *Huang v. Bd. of Governors of Univ. of N.C.*, 902 F.2d 1134, 1142 n. 10 (4th Cir. 1990)) ("[W]e believe that a careful review of the case law does reveal one guiding principle: whether a certain property interest embodies this 'particular quality' is not determined by reference to state law, but rather depends on whether that interest is 'fundamental' under the United States Constitution.").

"does not rise to the level of a 'fundamental' right."[183]  I agree.

Plaintiffs have cited no federal or state authority in which a court has held that students have a fundamental right under the Constitution to attend a particular school or that a charter school has a fundamental right under the Constitution to remain open.  In the absence of any such authority, and in light of the United States Supreme Court's directive that a court should "exercise the utmost care" when asked to "break new ground" in the jurisprudence of substantive due process,[184] I decline to find that any supposed protected interest Plaintiffs have advanced constitutes a "fundamental" right.[185]

This conclusion logically follows from my prior conclusion, for the reasons explained above, that neither the Individual Plaintiffs nor New Moyer have established the existence of a protected property interest regarding New Moyer's charter under the Due Process Clause for purpose of invoking the protections of procedural due process.  Thus, I decline Plaintiffs' request to second-guess the substantive merits of the

---

[183] Defs.' MTD Op. Br. 51.

[184] *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 125 (1992) ("[T]he Court has always been reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended.").

[185] "The mere novelty of such a claim is reason enough to doubt that 'substantive due process' sustains it; the alleged right certainly cannot be considered 'so rooted in the traditions and conscience of our people as to be ranked as fundamental.'" *Reno v. Flores*, 507 U.S. 292, 303 (1993) (citations omitted).

Department's decision to revoke New Moyer's charter through the prism of a substantive due process analysis.[186]

### 3. The Lack of Judicial Review Claim

Plaintiffs assert that the Charter School Act violates their rights to due process under the Constitution insofar as it "purports to preclude judicial review of the decision" of the Department to revoke New Moyer's charter.[187] Defendants respond that the Charter School Act properly precludes a direct appeal, but that a limited right of appeal is available in the form of certiorari review in the Superior Court (but not in the Court of Chancery), which Plaintiffs failed to pursue.[188] For the reasons discussed below, I find

---

[186] Plaintiffs made essentially three contentions in support of their substantive due process claim: (i) the Committee purportedly did not consider material facts in its Final Report, such as the role of K12 in New Moyer's academic performance; (ii) the Department purportedly treated New Moyer differently than other charter schools with similar academic performance issues; and (iii) the Department purportedly failed to consider New Moyer's request to implement the SpringBoard curriculum before revoking its charter. Pls.' Op. Br. 54-58. Were one to engage in a substantive due process analysis, the standard of review that would apply to the Department's revocation of New Moyer's charter, as non-legislative action, is "shocks the conscience," which encompasses "only the most egregious conduct." *Cnty. of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998); *United Artists Theatre Circuit, Inc. v. Twp. of Warrington, PA*, 316 F.3d 392, 399-400 (3d Cir. 2003) ("[E]xecutive action violates substantive due process only when it shocks the conscience but that the meaning of this standard varies depending on the factual context."). Without engaging in a point-by-point review of the merits, the Department's ultimate decision to revoke New Moyer's charter instead of placing New Moyer on probation does not shock the conscience, in my view, given that New Moyer indisputably was the lowest performing charter school in the State during the 2013-14 academic year based on the State's testing standards, and given that its academic performance had declined markedly from the prior year.

[187] Pls.' Op. Br. 58.

[188] Defs.' Ans. Br. 56. On December 30, 2014, the same day their reply brief on the present motion was due, Plaintiffs moved to amend the Consolidated Complaint to add a

52

(1) that the Charter School Act implies that a charter school may challenge whether the Department's decision to revoke a charter was made "after the exercise of due diligence and good faith" but may not challenge the merits of a decision to revoke a charter, and (2) that evidence Plaintiffs have presented fails to demonstrate that it is reasonably probable the Department did not exercise due diligence or act in good faith in this case.

The Charter School Act provides that the availability of appellate review of the approving authority's decision to revoke a charter depends on the identity of the approving authority. Under Section 515(g), if a local school district decides to revoke a charter it granted, the charter school may pursue in arbitration a claim to demonstrate why that decision was in error:

> [i]f a local school district which is an approving authority decides to revoke the school's charter or place the school on probationary status, the applicant may file for arbitration in writing with the American Arbitration Association in Philadelphia within 20 days of the local board's decision stating the reasons why it believes the local board decision was in error. . . . The arbitrator shall convene a hearing and determine whether the local board's decision was in error. . . . The arbitrator's decision shall be final and binding upon the parties.

By contrast, under Section 515(h), "[i]f the approving authority is the Department and it decides to revoke the school's charter or place the school on probationary status, its

---

cause of action for review by writ of certiorari. Defendants filed an opposition to that motion on December 31, 2014, which raises significant issues concerning whether the Court of Chancery has subject matter jurisdiction over such a claim. *See Maddrey v. Justice of Peace Court 13*, 956 A.2d 1204, 1207 (Del. 2008) ("[T]he Superior Court has original and exclusive jurisdiction among trial courts under the Delaware Constitution to issue common law writs of certiorari to inferior tribunals[.]"). Because Plaintiffs did not fairly present a claim for certiorari review in connection with their application for a preliminary injunction, I do not consider this issue in resolving the present motion.

decision shall be final and not subject to arbitration or judicial review."[189]  This provision plainly evidences the General Assembly's intention that the merits of a decision to revoke a charter (*i.e.*, whether that "decision was in error") shall not be subject to judicial review when that decision is made by the Department.

On the other hand, Section 516 of the Charter School Act, which enumerates the two reasons for which a charter may be revoked, expressly provides that the charter "shall be subject to revocation or probation, after the exercise of *due diligence and good faith*[.]"[190]  By necessary implication, this provision contemplates that a charter school may seek judicial review to challenge whether the approving authority complied with the "due diligence and good faith" standard in determining that one of the reasons for revocation has been satisfied.[191]  If this were not the case, the inclusion of the "due

---

[189] I note that Section 515(h) does not preclude Plaintiffs from asserting their Due Process Clause claims by operation of the Supremacy Clause of the United States Constitution.

[190] 14 *Del. C.* § 516 (emphasis added).

[191] The procedures governing the oversight and revocation process outlined in Section 515 of the Charter School Act afford the "applicant" or the "school" certain rights to receive notice and the opportunity to review and comment on the Committee's initial report as well as to respond to the Committee's final report. *See* 14 *Del. C.* §§ 515(b)-(d).  The statute also affords the "applicant" the right to arbitrate a revocation decision by a local school district. *Id.* § 515(g).  Based on these provisions, I find that the right of review implied in Section 516 extends to New Moyer but does not extend to the Individual Plaintiffs.  For the avoidance of doubt, as I noted at the outset of my legal analysis, I have not addressed in this opinion whether New Moyer has standing.

diligence and good faith" language in Section 516 would be rendered meaningless because no check would exist to ensure the standard was satisfied.[192]

In briefing the present motion, the parties provided no authorities concerning the meaning of "due diligence and good faith." The Court's research shows that this specific standard appears in only two provisions of the entire Delaware Code: Sections 512 and 516 of the Charter School Act, neither of which defines either "due diligence" or "good faith."

Absent a definition in the Charter School Act, I must look elsewhere to determine the plain meaning of "due diligence and good faith." "Because dictionaries are routine reference sources that reasonable persons use to determine the ordinary meaning of words, [Delaware courts] often rely on them for assistance in determining the plain meaning of undefined terms."[193] *Black's Law Dictionary* defines "due diligence" as "[t]he diligence reasonably expected from, and ordinarily exercised by, a person who seeks to satisfy a legal requirement or to discharge an obligation," and it further defines "diligence" as "[a] continual effort to accomplish something" and "[c]are; caution; the attention and care required from a person in a given situation."[194] These definitions are

---

[192] "[W]ords in a statute should not be construed as surplusage if there is a reasonable construction which will give them meaning[.]" *Oceanport Indus., Inc. v. Wilmington Stevedores, Inc.*, 636 A.2d 892, 900 (Del. 1994).

[193] *Freeman v. X-Ray Assocs., P.A.*, 3 A.3d 224, 227-28 (Del. 2010); *see also Ingram v. Thorpe*, 747 A.2d 545, 548 (Del. 2000) ("Dictionary definitions of undefined terms can be useful in construing statutes[.]").

[194] *Black's Law Dictionary* at 488 (8th ed. 2004).

generally consistent with how the term "due diligence" is construed in the Delaware Uniform Commercial Code,[195] and they also are captured well in the familiar concept of the duty of care in Delaware corporate law.[196] *Black's Law Dictionary* also defines "good faith" as "[a] state of mind consisting in (1) honesty in belief or purpose, (2) faithfulness to one's duty or obligation, (3) observance of reasonable commercial standards of fair dealing in a given trade or business, or (4) absence of intent to defraud or to seek unconscionable advantage."[197] This definition is a functional analogue of the Delaware corporate law concept of good faith.[198]

Applying these concepts here, I conclude that the evidence of record is insufficient to demonstrate that it is reasonably probable New Moyer could prove successfully at trial that the Department did not exercise due diligence and good faith when it determined that New Moyer failed to comply with its charter and to satisfy, in its operation of the school,

---

[195] *See* 6 *Del. C.* § 1-202 ("An organization exercises due diligence if it maintains reasonable routines for communicating significant information . . . and there is reasonable compliance with the routines.").

[196] *See, e.g.*, *Aronson v. Lewis*, 473 A.2d 805, 812 (Del. 1984) ("[D]irectors have a duty to inform themselves, prior to making a business decision, of all material information reasonably available to them.").

[197] *Black's Law Dictionary* at 713 (8th ed. 2004).

[198] *See, e.g.*, *In re Walt Disney Co. Deriv. Litig.*, 906 A.2d 27, 67 (Del. 2006) ("A failure to act in good faith may be shown, for instance, where the fiduciary intentionally acts with a purpose other than that of advancing the best interests of the corporation, where the fiduciary acts with the intent to violate applicable positive law, or where the fiduciary intentionally fails to act in the face of a known duty to act, demonstrating a conscious disregard for his duties.").

criteria set forth in Section 512 of the Charter School Act.[199]   In my opinion, the record demonstrates that the Department properly exercised due diligence in finding that New Moyer's charter was subject to revocation for many of the same reasons, discussed above, that demonstrate that the Plaintiffs were afforded appropriate due process.   In particular, the record shows that the Department actively sought to avail itself of all material information reasonably available to it, including through the statutory process that required public meetings and hearings and that permitted New Moyer to submit written responses.

Regarding the Department's good faith, there is no persuasive evidence in the record to suggest that the Department acted with an improper motive,[200] with an intention to violate Delaware law, or in conscious disregard of the Charter School Act.  Indeed, of

---

[199] Plaintiffs referenced the due diligence and good faith standard in their papers for the purpose of arguing that Defendants' conduct was arbitrary and capricious, *see* Pls.' Op. Br. 52, but they did not argue specifically that this standard was not met.  Nonetheless, in the interest of completeness, I consider whether the evidence of record is sufficient to demonstrate a reasonable probability of success on such a claim.

[200] In my opinion, the overwhelming weight of the evidence in the preliminary record disproves Plaintiffs' speculation that Defendants wanted to shut down New Moyer for any reason other than those first listed in the Secretary's Formal Review letter, all of which are grounds for revocation under Section 512 of the Charter School Act.  Rather, the evidence shows that Defendants repeatedly sought in good faith to help New Moyer comply with the Charter School Act.  For example, when the Department first discovered that New Moyer was in violation of its charter during its first year by using a different instruction method than that specified in its charter, the Department worked with New Moyer to modify its charter, rather than take other remedial action.  Similarly, it was the Department that first suggested the SpringBoard curriculum to New Moyer, which undermines Plaintiffs' contention that Defendants were wedded to the use of K12 at New Moyer.  The inability of New Moyer to obtain Department approval to modify its charter or to use the SpringBoard curriculum was not the product of any ulterior or improper motives of Defendants.

the seven areas of potential violations identified in the Secretary's Formal Review notice, only four areas formed the basis of the Department's decision to revoke New Moyer's charter. This reflects a good faith effort by Defendants to determine whether New Moyer was in violation of its charter and/or applicable law, and, if so, whether remedial measures were appropriate.

\* \* \* \* \*

Because Plaintiffs have failed to demonstrate a reasonable probability of success on the merits of any of the claims they have advanced on this motion, Plaintiffs have not satisfied the standard to earn a preliminary injunction. I thus need not address the elements of irreparable injury or the balance of the equities.[201]

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs' motion for a preliminary injunction is DENIED.

**IT IS SO ORDERED**.

---

[201] *See Cantor Fitzgerald*, 724 A.2d at 579.