# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| PROTECH SOLUTIONS, INC., | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | C.A. No. 2017-0642-TMR |
| | ) | |
| THE DELAWARE DEPARTMENT OF HEALTH AND HUMAN SERVICES, an agency of the State of Delaware, | ) ) ) ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONDUENT STATE & LOCAL SOLUTIONS, INC., | ) ) | |
| | ) | |
| Nominal Respondent. | ) | |

## MEMORANDUM OPINION

Date Submitted: November 14, 2017
Date Decided:  November 30, 2017

David A. Felice, BAILEY & GLASSER LLP, Wilmington, Delaware; Brian A. Glasser, Victor S. Woods, and James L. Kauffman, BAILEY & GLASSER LLP, Washington, District of Columbia; *Attorneys for Petitioner.*

Lawrence W. Lewis and John H. Taylor III, STATE OF DELAWARE DEPARTMENT OF JUSTICE, Wilmington, Delaware; *Attorneys for Respondent Delaware Department of Health and Social Services*

Steven L. Caponi, K & L GATES LLP, Wilmington, Delaware; Steven G. Schortgen and Jennifer Klein Ayers, K & L GATES LLP, Dallas, Texas; *Attorneys for Nominal Respondent Conduent State & Local Solutions, Inc.*

**MONTGOMERY-REEVES, Vice Chancellor.**

In March 2017, the State of Delaware Division of Child Support Services (the "Division" or the "State") issued a Request for Proposal ("RFP") for maintenance and operations ("M&O") services for the Delaware Child Support System (the "System").[1] Ultimately, three vendors submitted bids in response to the RFP. Two of the vendors, Conduent State & Local Solutions, Inc. ("Conduent") and Protech Solutions, Inc. ("Protech"), were the current contractor and subcontractor, respectively, for the System. Protech chose to rely on nonpublic data and stale information when writing its bid, all of which was in direct conflict with the information provided to the bidders by the Division. The Division ultimately rejected Protech's bid. Protech now comes to the Court asking to be saved from its own miscalculation because the winning bidder allegedly received nonpublic information—information that was consistent with the publicly available information. Specifically, Protech seeks a preliminary injunction to prevent the Division from awarding the contract to the winning bidder, Conduent, until the Court can determine whether to permanently enjoin the contract and require a re-bid process. I deny the Motion for Preliminary Injunction because Protech fails to show a reasonable probability of success in proving the contract should be permanently enjoined and rebid.

---

[1]    Resp't's Ex. A Attach. B, at 4.

## I. BACKGROUND

Conduent had a contract with the Division from May 1, 2010 to September 30, 2017 for the design, development, and implementation of the System (the "Prime Contract").[2] Protech served as a subcontractor under the Prime Contract until the final year.[3] In late October or early November 2016, the Division began drafting the RFP and issued it on March 1, 2017.[4] The new contract was to begin in August 2017.[5]

Both Conduent and Protech submitted bids in response to the RFP, as did a third non-party, Computer Aid, Inc, ("CAI").[6] The Division selected Conduent's bid.[7] On July 24, 2017, Protech submitted a written bid protest to the Division.[8] On August 4, 2017, Protech and the Division reached a standstill agreement such that Protech would not file or pursue litigation, and the Division would not award a

---

[2] Resp't's Opening Br. 1-2.

[3] *Id.* at 2.

[4] Resp't's Ex. B 119: 17-20; Resp't's Ex. A 1.

[5] *Id.*

[6] Pet'r's App. A735-828.

[7] Pet. 2.

[8] Resp't's Ex. J.

contract while the parties continued discussions between their lawyers.[9]  On August 11, 2017, after consideration of Protech's bid protest, the Division issued Protech a written denial.[10]  On September 5, 2017, Protech filed its Verified Petition to Protest/Enjoin a State Contract Award (the "Petition").  On November 14, 2017, the Court heard oral arguments on the Motion for a Preliminary Injunction.

## II.  ANALYSIS

### A.  Standard of Review

"[A] motion for preliminary injunctive relief requires [this Court] to take a step that, procedurally speaking, is extraordinary: to make a 'preliminary' determination of the merits of a cause before there can be a final adjudication of [petitioner's] claims."[11]  "To obtain a preliminary injunction, the [petitioner] must demonstrate: (1) a reasonable probability of success on the merits; (2) that they will suffer irreparable injury without an injunction; and (3) that their harm without an injunction outweighs the harm to the defendants that will result from the injunction."[12]  "A party showing a 'reasonable probability' of success must

---

[9]    Resp't's Opening Br. 4.

[10]   *Id.*

[11]   *In re the New Maurice J. Moyer Acad., Inc.*, 108 A.3d 294, 311 (Del. Ch. 2015).

[12]   *C & J Energy Servs., Inc. v. City of Miami Gen. Empls.' & Sanitation Empls.' Ret. Tr.*, 107 A.3d 1049, 1066 (Del. 2014).

demonstrate that it 'will prove that it is more likely than not entitled to relief.'"[13]

The preliminary injunction "burden is not a light one," and such an "extraordinary

remedy. . . will never be granted unless earned."[14]

Here, in order to prevail, Protech must demonstrate that it is more likely than

not that the Division violated the express requirements of the procurement statute,

employed a process that was arbitrary or capricious, or acted in bad faith.[15]

> This Court will not normally or lightly decline to defer to
> a . . . decision made by [an agency]. Given the broad
> discretion conferred upon the agency . . . and the highly
> deferential nature of the applicable judicial review
> standard, only in extraordinary cases would this Court be
> justified in setting aside such a decision.[16]

"Simple disagreement with the agency's evaluations or conclusions is . . . not enough

to support allegations of bias."[17] "Neither [are] [b]ald allegations of bias; inferences,

suspicion and innuendo; nor the possibility and appearance of impropriety, without

---

[13]    *Id.* at 1067.

[14]    *Wayne Cty. Empls.' Ret. Sys. v. Corti*, 954 A.2d 319, 329 (Del. Ch. 2008).

[15]    *Doctors Pathology Servs. P.A. v. State Div. of Pub. Health, Dept. of Health & Soc. Servs.*, 2009 WL 4043299, at *4-5 (Del. Ch. Nov. 20, 2009).

[16]    *Id.* at *5 (alterations in original) (quoting *Harmony Constr., Inc. v. State Dept. of Transp.*, 668 A.2d 746, 752 (Del. Ch. 1995)).

[17]    *Id.* at *8.

4

'hard facts' implying actual misconduct, . . . sufficient to fulfill the clear and convincing proof required to show bias on the part of the government."[18]

## B. Protech Has Not Demonstrated a Reasonable Probability of Success on the Merits

Protech advances four main arguments related to alleged deficiencies or biases in the procurement process, which it contends are sufficient to require a do-over of the entire bidding process. First, Protech asserts the RFP was not "sufficiently definite to permit free, open, and competitive bidding on a common basis."[19] Second, Protech contends the Division provided Conduent with inside information about "personnel resources."[20] Third, Protech argues the Division utilized a "deficient and otherwise arbitrary" process by not disclosing the use of a technology scoring committee in the RFP.[21] Fourth and finally, Protech avers that Conduent's proposal "failed to meet the material requirements of the RFP and should have been summarily rejected."[22] Unfortunately for Protech, however, these arguments are based on misunderstanding of Delaware procurement law,

---

[18]     *Id.*

[19]     Pet'r's Opening Br. 31.

[20]     *Id.*

[21]     *Id.* at 31-32.

[22]     *Id.* at 32.

misconstruction of the facts, and rather ironic allegations of use of nonpublic information.

### 1. Protech fails to show a reasonable probability that the Division used unlawful procurement procedures

Protech's initial argument fails for two reasons. First, Protech's arguments about the statutory requirements of the RFP apply the standard for large public work contracts rather than the correct standard for professional services contracts. Second, even applying the correct standard, Protech has failed to demonstrate a reasonable probability that the Division violated an express requirement of the procurement statute.

Procurement law in Delaware is largely statutory and found in Title 29, Chapter 69 of the Delaware Code. Under the current statutory configuration, Chapter 69 has six subchapters: general provisions, central contracting, materiel and nonprofessional services, public works contracting, the energy performance contracting act, and professional services.[23] "'Professional services' means services which generally require specialized education, training or knowledge and involve intellectual skills. Examples of professional services include, but are not limited to, . . . computer information management . . . ."[24] The professional services subchapter

---

[23] 29 *Del. C.* §§ 6901-6988.

[24] 29 *Del. C.* § 6902(19).

governs the contract at issue in this litigation.[25]  The contract at issue in this litigation is a "large professional service procurement process" under Sections 6981 and 6982.[26]

Protech relies on a standard from *Delaware Technical and Community College v. C & D Contractors, Inc.*, where the Supreme Court of Delaware examined a prior version of the public works subchapter.[27]  "'Public works contract' means construction, reconstruction, demolition, alteration and repair work and maintenance work paid for, in whole or in part, with public funds."[28] Current Section 6962 governs large public works contract procedures.  Subsection (d) is titled "Bid specifications and plans requirements," and states in part:

> Preparation of plans and specifications and approvals. **--** The contracting agency *shall* cause *suitable plans and specifications* to be prepared for all contracts pursuant to this section. All plans and specifications shall be prepared by registered and licensed architects and/or engineers who

---

[25]     Resp't's Ex. A 1 ("This request for proposals ("RFP") is issued pursuant to 29 *Del. C.* §§ 6981 and 6982.").

[26]     *Id.*

[27]     *Del. Tech. & Cmty. Coll. v. C & D Contractors, Inc.*, 338 A.2d 568, 569 (Del. 1975) ("It follows that 'suitable' plans and specifications, within the meaning of § 6905(b), are only those which are sufficiently complete, definite, and explicit as to permit free, open, and competitive bidding on a common basis.").

[28]     29 *Del. C.* § 6902(22).

7

> shall sign the plans and specifications and affix their seals thereto.[29]

Case law has developed around this Section and its prior incarnations, specifically about what suitable plans and specifications entail.[30]  Protech relies on this case law for its argument that the RFP, issued pursuant to Sections 6981 and 6982 and *not* Section 6962, was not "sufficiently complete, definite, and explicit as to permit free, open, and competitive bidding on a common basis,"[31] because it did not provide bidders with exact staffing numbers and a budget expectation, which Protech alleges were necessary for it to prepare its bid competitively.[32]  None of the case law Protech relies on applies to professional services procurement or the current case.[33]

---

[29]    29 *Del. C.* § 6962(d)(1) (emphasis added).

[30]    *See, e.g.*, *Del. Tech. & Cmty. Coll.*, 338 A.2d 568; *Harmony Const., Inc. v. State Dep't of Transp.*, 668 A.2d 746 (Del. Ch. 1995); *Wohlsen Constr. Co. v. Dep't of Admin. Servs.*, 1998 WL 157365 (Del. Ch. Mar. 31, 1998).

[31]    Pet'r's Opening Br. 32.

[32]    *Id.* at 22-24.

[33]    Protech also cites a case from 1954 interpreting the requirements under then Title 22, Chapter 5, which governed the establishment of municipal parking authorities. *Wilm. Parking Auth. v. Ranken*, 105 A.2d 614 (Del. 1954). This case also is not on point as to the statutory requirements of the RFP.  Furthermore, Protech fails to show a reasonable probability that the Division failed "so far as possible" to put the bidders "on terms of perfect equality, so that they may bid on substantially the same proposition, and on the same terms." *Id.*  The Division provided all bidders with the same information, but Protech drew different conclusions based on their own nonpublic information. *See infra* Section II.B.2.a.

Instead, the requirements for a large professional service RFP are more flexible and set out in Section 6981:

> (f) Each agency ***shall*** establish written administrative procedures for the evaluation of applicants. These administrative procedures ***shall*** be adopted and made available to the public by each agency before publicly announcing an occasion when professional services are required. One or more of the following criteria ***may*** be utilized in ranking the applicants under consideration:
>
> (1) Experience and reputation;
>
> (2) Expertise (for the particular project under consideration);
>
> (3) Capacity to meet requirements (size, financial condition, etc.);
>
> (4) Location (geographical);
>
> (5) Demonstrated ability;
>
> (6) Familiarity with public work and its requirements; or
>
> (7) Distribution of work to individuals and firms or economic considerations.
>
> (g) In addition to the above, other criteria necessary for a quality, cost-effective project ***may*** be utilized.
>
> (h) Each project shall be given individual attention, and a weighted average may be applied to criteria according to its importance to each project.
>
> (i) For the selection process described in § 6982(b) of this title, price ***may*** be a criteria used to rank applicants under consideration.[34]

---

[34]     29 *Del. C.* § 6981 (emphasis added).

This Court analyzed the standards for professional services RFPs in *Doctors Pathology Services P.A. v. State Division of Public Health, Department of Social Services*.[35] There, this Court considered a request for injunctive and declaratory relief when "a frustrated provider of laboratory services, assert[ed] that the agency failed to comply with the statutes governing its procurement of professional services."[36] "Agency procurement procedures are deemed 'lawful unless they deviate materially from the relevant statute.'"[37] Section 6981 establishes only two *requirements* for the professional services procurement process: there must be (1) a public announcement including several enumerated items of information, and (2) "written administrative procedures for the evaluation of applicants."[38] This Court has recognized that the remainder of "the professional services negotiation subchapter establishes only general guidelines for the procurement process: agencies are granted great discretion to shape the process to meet their needs."[39]

---

[35]    2009 WL 4043299 (Del. Ch. Nov. 20, 2009).

[36]    *Id.* at *1.

[37]    *Id.* at *4 (quoting *Danvir Corp. v. City of Wilm.*, 2008 WL 4560903, at *5 (Del. Ch. Oct. 6, 2008)).

[38]    29 *Del. C.* § 6981; *see also Doctors Pathology*, 2009 WL 4043299 at *4.

[39]    *Doctors Pathology*, 2009 WL 4043299 at *4.

10

Thus, to show a material deviation from Section 6981 sufficient to obtain a preliminary injunction, Protech must show a reasonable probability of success on claims that the Division failed to make the necessary public announcement or had no written procedures for the evaluation of applicants. At oral argument, Protech withdrew its argument that the Division did not make the necessary public announcement,[40] and Protech has not alleged that there were no written procedures for the evaluation of applicants. Therefore, the Division's procedures did not deviate materially from Section 6981.

### 2. Protech fails to show a reasonable probability that the Division's process was arbitrary, capricious, or in bad faith

Protech's remaining three arguments relate to whether the Division's decision process was arbitrary, capricious, or in bad faith.

#### a. Protech fails to show a reasonable probability that Conduent's alleged "inside information" was inconsistent with information provided to all bidders

Ultimately, Protech objects to three forms of alleged inside information that Conduent received: the September 9, 2016 email from Midge Holland[41] to John

---

[40] Oral Arg. Tr. 28.

[41] Midge Holland was the Chief of Administration of the Division until March 2016. Pet. ¶ 34. After March 2016, Holland became the Director of Information Resources Management ("IRM"). IRM is responsible for the Delaware Department of Health and Social Services' information technology, including the System. *Id.* ¶ 35.

Polk[42] and Maggie Claypool,[43] the June and July 2016 meetings about staffing under the Prime Contract, and the "dreaming sessions" Conduent conducted under the Prime Contract.

Conduent had a contractual relationship with, and contractual obligations to, the Division until September 30, 2017. The June and July 2016 meetings were to discuss the operations of the Division and Conduent's staff, and available office space, through the final year of the prime contract—October 2016 to September 2017.[44] The allegedly "secret meetings" on June 16 and July 25 were about business under the Prime Contract. Protech's objection to these meetings suggests that either Conduent should have stopped communicating with the Division about anything three months before the new RFP was even conceived of, regardless of any ongoing contractual obligations Conduent had under the Prime Contract, or that the Division had a duty to disclose any and all information about current operations in the RFP. Neither of these outcomes is tenable.

Conduent conducted the "dreaming session" Protech objects to in January 2017, and it was a service provided to many customers in many jurisdictions, not

---

[42]     John Polk is Senior Vice President and Managing Director of Child Support Services for Conduent. *Id.* ¶ 29.

[43]     Maggie Claypool is Conduent's Project Manager for the System. *Id.* ¶ 26.

[44]     Resp't's Ex. B 33-37.

some elaborate scheme to illicit nonpublic information as Protech suggests.[45] Moreover, by the time Conduent submitted its bid, it had already "provided a set of a dozen or more recommendations that will have positive program impact" from the "dreaming session."[46] The dreaming sessions were about providing a service under the Prime Contract. For the Court to penalize Conduent in this bidding process for providing services under a prior contract would result in an absurd rule. Furthermore, as a matter of public policy, the Court would be unwise to disincentivize state contractors from striving to improve their performance under their contracts by precluding them from, or crippling them in, forthcoming bids for other contracts.

The September 9, 2016 email exchange is more relevant to the current litigation. On September 9, 2016 at 4:18 pm, John Polk, Managing Director at Conduent, wrote to Midge Holland and Maggie Claypool:

> Midge, I think he's playing this.
> We've had many conversations about this and the quality of their work has never been part of the discussion.
> Simply stated, we told him we wanted to be able to bid on the work in Oct. 2017 and we would not be able to if we didn't have some experience in the technical aspects of the work.

---

[45]     Pet'r's App. A745.

[46]     *Id.*

13

And, we have not closed the door on teaming with them on the rebid but did tell them based on our understanding the contract would be about half what it is today.
We'll make it work Midge.
Nagaraj is just running the plays in his playbook.[47]

Midge Holland replied at 4:30 pm the same day:

Not sure where half came from - I have not heard that from IRM although I know that child support is really interested in cutting costs. [W]hile a 50% reduction would great for the business's expenses, from the technical side I have not see[n] anything that indicates that the state would be able to competently pick up that much of the work. That being said, I would ask that if they will agree to team for the bid, in writing of course, we consider the impact on the current team with that in mind.[48]

The Division's corporate representative Midge Holland has admitted she presumed John Polk was referencing the upcoming bid for the 2017-2018 contract in his email.[49]  Ultimately, however, this conversation does not show that Protech has a reasonable probability of success in showing bad faith or an arbitrary or capricious process because Ms. Holland only conveyed information that was consistent with publicly available information during the bid process.

The publicly available information is as follows.  First, Amendment Six of the Prime Contract, the 2016 amendment which is a public document, clearly identifies

---

[47]     *Id.* at A532-33.

[48]     *Id.* at A532.

[49]     Resp't's Ex. B 78: 20-23.

47,040 as the total number of hours Conduent was contractually obligated to provide in 2016-2017.[50] Second, at the mandatory pre-bid meeting a non-party asked, "[c]an you provide the current team size/expected staffload throughout the engagement?"[51] The Division replied that the "[c]urrent team size is 22, excluding batch operations, technical and non-technical. We are looking for efficiencies."[52] Third, in the written public response to pre-bid questions the Division confirms "[t]here are 23 full-time positions and 1 part-time position vendor staff supporting the M&O section of the current contract."[53]

Instead of relying on this publicly available information, Protech accessed a nonpublic database to make its own projections of staffing needs in the future based on trends in tickets.[54] Protech combined its nonpublic information with the vague statement that the Division was "looking for efficiencies" and statements of hope about the Division taking over more of the M&O work from contracts that were

---

[50]    Resp't's Ex. D.

[51]    Resp't's Ex. W.

[52]    *Id.*

[53]    Resp't's Ex. N.

[54]    Resp't's Ex. M 61-62.  The doctrine of unclean hands may bar Protech's claims should this litigation advance. *Nakahara v. NS 1991 American Tr.*, 718 A.2d 518 (Del. Ch. 1998).  Under the doctrine of unclean hands, this "Court refuses to consider requests for equitable relief in circumstances where the litigant's own acts offend the very sense of equity to which he appeals." *Id.* at 522.

years old.[55] Protech then came up with a staffing suggestion significantly lower than the current staffing needs, from which the Division gave no indication it was considering deviating, and lower than both other bidders. Protech gambled based on its inside information and now asks the Court to grant a re-do based on a convoluted and manufactured suggestion that Conduent had inside information that gave it an unfair advantage. Thus, Protech fails to show a reasonable probability of success on the merits of this argument.

### b. Protech fails to show a reasonable probability that it was prejudiced by the Division's failure to uphold its implied obligation to adhere to the terms of the RFP

The Division had an implied obligation to the bidders to adhere to the terms of the RFP.[56] The bidders' alleged reliance on the RFP, however, must be reasonable, and the bidder must show it was misled and prejudiced by the supposed non-adherence by the State.[57] Protech argues the Division failed to adhere to its own RFP. Protech's two main objections are that (1) the technology scoring committee was not disclosed in the RFP and (2) the Department of Health and Social Services' Division of Management Services, Office of Contracts Management and

---

[55]     Resp't's Ex. W; Pet'r's App. A543.

[56]     *See Autotote Lottery Corp. v. Del. State Lottery*, 1994 WL 163633, at *8 (Del. Ch. Apr. 22, 1994).

[57]     *Id.*

16

Procurement approved the RFP instead of the Delaware State Procurement Office. Protech has not shown a reasonable probability of success on the merits of either of these arguments.

First, the RFP disclosed that the business and technology portions of the bid would be considered separately by a two-tier scoring system. Protech was not "misled" because the Division did not explicitly explain that slightly different group of people would score the two tiers.[58] Second, Protech has not alleged any prejudice from either of these supposed procedural deficiencies and, therefore, fails to show a reasonable probability that the Division acted in bad faith or employed an arbitrary or capricious process.

### c. Protech fails to show a reasonable probability that Conduent's proposal was materially deficient

Finally, Protech argues Conduent's bid was materially deficient in that it failed to adhere to the two percent inflation rate cap between the first and second years or to include a separate line item for the Affordable Care Act ("ACA") safe harbor fee. Both of these arguments are without merit.

On its face, Conduent's proposal appears to violate the two percent inflation rate cap. The first-year quote is $3,750,000 and the second-year quote is

---

[58] Resp't's Ex. A Attach. B, at 30.

17

$4,314,600.[59]  Assuming each yearly quote is for 47,000 hours, the first year comes out to $79 per hour, and the second year is $91.80 per hour.  This reflects an increase of greater than two percent per year.  This is a miscalculation, however, since Conduent explains in its "Assumptions" section of the Project Cost Information that the Operational costs are based on 41,667 hours in year one and 47,000 hours in the following years.[60]  This decrease in hours prevents Conduent from double billing the Division for the roughly two months of overlap between the Prime Contract and new 2017-2018 contract overlap.[61]  The two-month overlap was a built-in "transition period" in case the Division selected a new vendor.[62]  If the Division selected Conduent for the new contract, then the Division would owe Conduent compensation under both the Prime Contract and the new contract.  The decrease in hours and price for the first year essentially was a discount offered by the incumbent bidder so as to not double-bill the Division for the same services.  Taking into account this assumption of lower hours, the hourly rate for year one is actually $89.97 per hour.  The increase to $91.80 per hour in year two is two percent and, thus, in line with the two percent cap.

---

[59]    Pet'r's App. A749.

[60]    Resp't's Ex. H A-3.

[61]    Oral Arg. Tr. 88-89.

[62]    *Id.*

Protech argues that Conduent unfairly provided this discount that no other bidder could provide. In order for the Division's process to be arbitrary or capricious, however, the Division must do something to treat the bidders differently. That is not the case here. Instead, Conduent was in a position, through no fault of the Division, to offer a discounted rate of services in the first year. As with the services provided under the Prime Contract, it would be unwise for the Court to state a rule that would incentivize current state contractors to double-bill the State for the same work. Likewise, the Division is not acting in bad faith by preventing double-billing for the same work.

Protech also alleges that the RFP required Conduent to include a separate line item denoting the additional fee required by the State in case the State is deemed a Common-Law Employer under the Affordable Care Act (the "Additional Fee"). The RFP says, "[t]he State requires that all Vendors shall identify the Additional Fee to obtain health coverage from the Vendor and delineate the Additional Fee from all other charges and fees."[63] Appendix E to Attachment B of the RFP, however, says "Operational Costs may be categorized separately . . . or bidder may choose to bid a single all-inclusive total operational cost per year."[64] Moreover, the schedule

---

[63]    Resp't's Ex. A 16.

[64]    Resp't's Ex. A Attach. B, at 53.

19

supplied in Exhibit E to be used by the bidders does not include a separate line item for the Additional Fee,[65] and the scoring criteria supplied in the RFP has a single item that says "Cost (including ACA Safe Harbor Additional Fees)."[66] It is reasonable to submit a total operation cost for the year on the Schedule supplied in Appendix E that does not have a separate line item for the Additional Fee as long as it is for the total operation cost. In fact, the other bidder in this process, CAI, also opted to submit a single, all-inclusive total operational cost without a separate line item for the ACA fee.[67] Finally, Protech admits that failure to separate the ACA fee is not material enough alone to warrant setting aside the entire bidding process.[68]

For all these reasons, Protech has not met its burden of showing a reasonable probability of success on the merits. Because Protech fails "to demonstrate a reasonable probability of success on the merits of any of the claims . . . [Protech has]

---

[65]    *Id.*

[66]    Resp't's Ex. A 12.

[67]    Pet'r's App. A818.

[68]    Even if the allegations are true, the RFP gives the Division "the right to waive minor irregularities and minor instances of non-compliance," Resp't's Ex. A Attach. B, at 30, and thus, Protech has not shown a reasonable probability of success on the merits by this argument either.

not satisfied the standard to earn a preliminary injunction.  I thus need not address the elements of irreparable injury or the balance of the equities."[69]

## III.    CONCLUSION

For the foregoing reasons, the Motion for a Preliminary Injunction is denied.

**IT IS SO ORDERED**.

---

[69]    *In re New Maurice J. Moyer Acad., Inc.*, 108 A.3d 294, 325-26 (Del. Ch. 2015).